## DANIEL GRANGER & others, executors, *vs.* WILLIAM A. BASSETT appellant.

In a hearing on a probate appeal before a single justice, no exception lies to his refusal of the request of a party for the appointment of some person to take the evidence of witnesses to be examined orally, if he reports to the full court such evidence himself.

Under the Gen. Sts. c. 98, § 12, the right to open former accounts in probate upon the settlement of any account by an executor or administrator is limited to accounts in the course of settlement of the same estate.

In a hearing on a probate appeal from a decree accepting the account of an executor, he is a competent witness to prove payment to the deceased of money due to her from him in her lifetime.

A statute which provides that income of any property, real or personal, given by will until the happening of a contingent event, shall be apportioned upon the happening of such event at any time before the end of a year from the time when the whole of the annual amount for the preceding year had become due, (Gen. Sts. c. 97, §§ 23, 24,) does not make apportionable dividends from the profits of business of incorporated companies not declared at the time when such event happens.

Distributive payments by an executor, to residuary legatees, of the residue shown by his account, are not allowable therein.

APPEAL from a decree of the judge of probate allowing the account of the executors of the will of Nancy Horton.

Hearing before *Hoar*, J., who made a report thereof, the material parts of which are as follows:

"The appellant at the commencement of the hearing desired he court to appoint some person to take down the evidence produced, but the court was of the opinion that the case did not come within the statute for that purpose.

"James Horton died March 4, 1861, leaving a will by which he gave one half of the income of his property, together with the use of his dwelling-house, to his wife, Nancy Horton, during her life. The residue of his property, appraised at ninety-five thousand dollars, he gave to his son William, his only child.

"William Horton died October 29, 1863, leaving a will by which he gave one half of the income of his property to his mother, Nancy Horton, and the other half of the income to his wife, Mary E. Horton, during their joint lives, and to the survivor during her life the whole of the income; and, with the exception of a few legacies amounting to four or five thousand

dollars, gave the residue of his whole property to trustees, in trust, for the use and benefit of thirteen different societies and corporations, to be transferred and delivered to the same upon the death of the last surviving Mrs. Horton. William Horton had property in his own right, in addition to that which came to him by his father's will, appraised at about twenty thousand dollars.

" Nancy Horton died January 18, 1865, leaving a will by which she gave about two thousand dollars of her property in numerous legacies to her relatives and friends, and the residue, about two thousand dollars more as appraised, to the heirs of her husband and her own heirs equally.

" William Horton, executor of his father's will, returned to the probate court one account only, bearing date April 14, 1862.

" Daniel Granger, who is one of the executors in this case, and was administrator *de bonis non* with the will annexed of the estate of James Horton, returned to the probate court one account only as such administrator, bearing date August 2, 1864.

" Said Daniel Granger, executor of the will of William Horton, returned to the probate court one account only as such executor, bearing date August 2, 1864.

" Said Daniel Granger and John Balch, executors of the will of Nancy Horton, returned to the probate court one account only as such executors, in July 1866, from the allowance of which appeal was taken; which is this case.

" The appellant produced the account of William Horton to show a misappropriation of income, and at the same time admitted that Nancy Horton signed her name to these words at the end of the account: " I, the subscriber, interested in the within mentioned estate as the only heir under the will with William Horton, executor, hereby certify that I have examined the within account and consent that it be allowed without further notice to me ; " upon which the court ruled that the settlement was conclusive against the appellant in the absence of fraud, of which no evidence was shown.

" It was then admitted that there was no account of the in-come received, except the account of William Horton, to the

29th day of October 1863, the date of William Horton's death and except the proof that it had all been duly paid and settled as shown by her receipt and release; and the executors, to show that they should not be required to account for the income received prior to said 29th day of October, produced the following writing executed by her, under seal, in the presence of John Balch as attesting witness, under date of December 4, 1863, which, they admitted, first came to the knowledge of the appellant at the beginning of this hearing: ' I, Nancy Horton, widow of James Horton, late of Newburyport in the county of Essex, gentleman, deceased, hereby acknowledge to have received of my late son, William Horton, now deceased, who was executor of the will of my late husband, one half of all the income, received by him in his lifetime, of the estate of my said husband, agreeably to his said will, and, in consideration of the bequest made to me by the will of my said son of one half of the income, during my life, of all his estate, in which he included all the estate late of my said husband, and of other good considerations, hereby release all claim to said income given to me by the will of my said husband, and agree to accept said half of the income of the estate of my said son, as given to me by his said will, as my full share of income of his estate and of the estate late of my said husband, it being my wish that the trustees under my said son's will should hold all the estate of which I am to receive one half of the income. I give this release of a part of what I might claim by virtue of the will of my said husband and the will of my said son, because I believe it was my son's intention that his wife and I should receive, so long as we may both live, an equal amount of income, yearly and every year, and because it is my own desire that she should receive the same proportion of income as I receive myself.'

" The attesting witness, John Balch, one of these executors, testified to the execution of the same by Nancy Horton, and further testified that he and Mr. Granger, not understanding the effect of the provisions in the two wills of James Horton and William Horton, each giving one half of the income to Nancy applied for legal advice, and, upon being advised that the lega.

effect was to give to Nancy Horton three quarters of the income, and to Mary E. Horton, widow of William Horton, one quarter only of the income, reported to Nancy Horton the result; upon which she told him she would not have it so; that it was the intention of William they should share equally the income, and that it should be fixed in some way so that she should have one half and Mary E. Horton one half of the income; and that this was the whole effect and force of the writing as stated to her by him and to him by her before and at the time this writing was executed by her. He testified that the writing was read to her and she understood it, but still testified again that the whole object and purpose of the writing was to make an equal division of the income between herself and Mary E. Horton. But the witness also testified that it was her object and desire expressly stated and understood by her, to confirm and ratify whatever her son had done with the property, and not to have his account examined or reopened. He testified that he did not know where he first got the paper, whether it was from the hand of Mr. Granger or not, but that Mrs. Horton after she signed it delivered it to him to keep; and also testified that Mrs. Horton was bright and well at that time.

" Mr. Granger testified that he would not have had anything to do with settling the estates if he had been obliged to go back into William Horton's accounts; that he would not have had anything to do with looking up the income prior to William Horton's death; but that he did not know that he ever told any one so; and that Mrs. Horton told him she would not have him go into William's accounts at all, that she did not want his accounts looked up and overhauled at all.

" Upon this evidence the court ruled that the appellant could not make any inquiry as to the income in this case prior to the death of William Horton. The appellant claimed that there was income unaccounted for to the amount of about ten thousand dollars.

" The appellant then showed that about three thousand dollars of income between the dates October 4, 1864, and December 19, 1864, did not appear in any account in the probate court and

did not appear to be accounted for at all; upon which Mr. Granger presented a receipt signed by Nancy Horton for between four hundred and five hundred dollars, and his account book showing charges for various articles equal to the balance; and testified that Nancy Horton in her lifetime examined and settled this account with him. It was admitted that this was the first time that these charges came to the knowledge of the appellant. But the court found that the whole had been rightfully paid, settled, and accounted for.

"The executors admitted that they had not apportioned the income on dividends declared after January 18, 1865, the date of Nancy Horton's death, which the appellant claimed they ought to apportion, but had apportioned the rents, and interest on bonds and notes. And the court ruled that such dividends were not apportionable under the statute.

" The appellant then claimed that the distribution of the residue by the executors as part of their account, not made by order of the probate court, was not made equally in compliance with the will, and desired the court to correct the same. But the court ruled that the account of distribution was not for him to pass upon in this case.

" The appellant relied upon the books and accounts of the executors, as filed in probate court and presented at the hearing, and the testimony of the executors, and was ready to offer at that time no other evidence. Upon this evidence the court ordered the decree of the probate court to be affirmed."

*C. Lamson,* for the appellant.

*S. B. Ives, Jr., & C. Kimball,* for the appellees.

WELLS, J. 1. The first point relied upon by the appellant in the argument is, that the refusal to appoint some person to take down the evidence produced at the hearing before the single justice was erroneous. The appellant offered no witnesses to be examined orally; but relied upon the inventories and accounts on file in the probate court, the books, papers, statements and explanations called out by the examination of the executors themselves. This examination is reported by the justice who heard the case. The Gen. Sts. *c.* 113, § 21, provide for such a

eport, either " by the justice before whom the hearing is had, or by some person designated by him for that purpose." The 34th Rule in Chancery is, by the 37th Rule, made to apply to hearings upon probate appeals, only so far as applicable. If it is ever to be regarded as peremptory, we think it cannot be so in hearings of this nature.

2, 3. The second and third points seem to rest upon the assumption that, in the settlement of the account of Granger and Balch as executors of the will of Nancy Horton, all former accounts, not only of Granger alone, as administrator *de bonis non* of the estate of James Horton, and as executor of the will of William Horton, but also the account of William Horton as executor of the will of James Horton, may be opened for the correction of errors and omissions, so as to charge these accountants therewith. But such is clearly neither the effect nor the intention of the statute. Gen. Sts. *c.* 98, § 12. Only former accounts in the course of the settlement of the same estate can be so opened. The proceedings in other estates, although the same person be executor or administrator, and although the property of one be derived from the other, are collateral merely, as judicial proceedings. The accounts which the appellant seeks to have opened were rendered in the lifetime of the testatrix, Nancy Horton. She had full opportunity to be heard ; she examined them and indorsed upon each her consent that it should be allowed. The correctness of accounts so assented to and allowed cannot be called in question collaterally. They are conclusive for all purposes affecting the account of these executors. This renders it unnecessary to consider the effect of the release upon income previously received, or any other questions arising from the former probate accounts.

4. The fourth point relates to an adjustment of income between Granger, as executor of William Horton's will, and Nancy Horton, in her lifetime, after the date of the former accounts. Undoubtedly if this income still remained in Granger's hands he would be bound to account for it as a debt due from himself to his testatrix. The principal question here is, whether Granger himself was a competent witness to prove that Nancy Horton

had received her share of that income during her life. The statute admits parties to testify except " where one of the origina. parties to the contract or cause of action in issue and on trial is dead," &c. Gen. Sts. *c.* 131, § 14. The test of competency is " the contract or cause of action in issue and on trial," not the fact to which the party is called to testify. If the cause of action was a matter transacted with a person who has deceased, the other party to that transaction, being also party to the suit, is not admitted as a witness at all; and cannot testify to any fact in the case. Otherwise he is admitted as a witness; and, being so admitted, the statute contains no restriction nor limitation as to the facts to which his testimony may or may not be directed. His competency must be determined in advance by the nature of the controversy and the questions in issue. If, upon that test, he is admitted as a witness in the case, his testimony is competent for all purposes, although it may relate to transactions with a person since deceased, which prove to be involved in or to affect the matter in dispute. In the trial of an issue upon the personal claim of an executor or administrator against the estate, under Gen. Sts. *c.* 97, §§ 26, 27, the proviso would undoubtedly exclude him from testifying. See *Ela* v. *Edwards*, 97 Mass. 318. The claim of a debt due from the executor to his testatrix was not put in issue by these proceedings, and did not appear to be on trial. It became a disputed fact in the course of the testimony of the executor who had been properly admitted as a witness generally in the case. No objection appears to have been made to the testimony at the hearing, and it does not appear but that the testimony on this point may have been in answer to inquiries put by the appellant himself. The question of its competency therefore is not fairly open to the argument of the appellant here. But, if objection had been made, the particular objectionable testimony could not have been excluded.

There being nothing to control the testimony of Granger upon this point, there is no ground for charging him with any sum as due from him to the testatrix; and, of course, no inferences can be drawn from the asserted fact that he "kept back" a large

sum from his probate account. No question is made but that the release properly applied to this portion of the income.

5. The Gen. Sts. *c.* 97, § 24, do not change the rule of law which held dividends from the profits of business of incorporated companies not to be apportionable. *Foote, appellant,* 22 Pick. 299. Such dividends are not only contingent, but uncertain in amount, until the expiration of the full period for which they are declared.

6. The probate court had no authority over the distribution of the residuary legacies. The relative rights of the legatees, and other questions affecting such distribution, cannot properly be heard upon the settlement of the executor's account. For the same reason, the executor should not be allowed for their payment in his account, as the effect of such allowance, if any effect can be given to it, would be to prejudice the rights of those who should claim a larger share than had been paid them. The settlement of the account should determine the amount of residue subject to distribution, but not the rights or shares of those who are entitled.

Accordingly the decree of the probate court is to be affirmed, except as to the payments by way of distribution among the residuary legatees.