JOHN Q. JONES, Appellant and Respondent, *v.* THE TERRE HAUTE AND RICHMOND RAILROAD COMPANY, Appellant and Respondent.

The directors of a corporation have no power to discriminate between its stockholders, where no such power of discrimination is conferred by the charter. (EARL and GRAY, CC., dissenting.)

A stockholder in a corporation has an interest, in proportion to the amount of his stock, in all the corporate property, and has a right to share in any surplus of profits arising from its use and employment in the business of the company; and this right does not depend upon the time when he becomes a stockholder, but attaches whenever he acquires the stock, and entitles him to all subsequent dividends. (EARL and GRAY, CC., dissenting.)

Accordingly *held* (EARL and GRAY, CC., dissenting), where plaintiff holding bonds of defendant, by their terms convertible into stock, surrendered them and received stock issued prior to the declaration of a dividend by the board of directors, that said board had no right to limit the payment of the dividend to the stockholders holding stock at a day prior to the issue of such stock, which was the close of the fiscal year of the company, but that plaintiff was entitled to the dividend; and that the fact that the directors had adopted a particular day as the close of the corporate fiscal year, or special days for declaring dividends, or that they directed the close of the transfer books for any purpose did not, in any way, impair the legal rights of stockholders to share in dividends subsequently declared.

(Argued January 8, 1874; decided May term, 1874.)

THESE are cross appeals by the parties, respectively, from different portions of a judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of plaintiff, entered upon the decision of the court, on trial without a jury.

This action was brought to recover a cash and a stock dividend, to which the plaintiff claimed to be entitled as owner, of eighty shares of the stock of the defendant, a corporation chartered under a law of the State of Indiana.

The facts on which the claim was based were found by the court, substantially, as follows:

The plaintiff, on the 26th day of November, 1856, was the owner of four bonds of the defendant, which he had purchased before the first day of January of that year. Each of the bonds bound the defendant to pay the holder thereof $1,000, at a certain day subsequent to the transactions, hereafter mentioned, with interest in the meantime, payable as stated in the case, "in the usual form," by coupons attached; and, severally, contained the following provision, viz.: "And the said company also agree to transfer to the holder thereof, at any time before the said principal sum shall fall due, whenever such holder shall elect to receive the same, on delivery of this obligation and of the unpaid coupons or interest warrants, to the treasurer of said company, at Terre Haute, twenty shares of fifty dollars each of the capital stock of said company, in exchange for and in satisfaction of this obligation." The plaintiff being desirous of availing himself of that provision did, on the said 26th day of November, 1856, mail the said bonds and the coupons attached thereto, at the city of New York, to the secretary of the company at Terre Haute; they reached there on the thirtieth of that month, but the company, without any fault or omission on its part, did not receive them until the third day of December ensuing. A letter accompanied the bonds, asking stock to be issued for the same in the name of the plaintiff, and directing a certificate therefor to be sent to him at New York.

The stock and transfer books of the defendant were closed

on the thirtieth day of November and continued so closed for the space of fifteen days thereafter. A notice that they would be so closed was published in the State of Indiana on the twenty-second day of that month; and the plaintiff was informed on the first day of that month that they would be closed on the thirtieth. On the 16th day of December, 1856, the defendant sent by mail to the plaintiff a certificate, dated December 3d, 1856, for eighty shares of its stock, in exchange for the said bonds, with a check for interest thereon from September first to December first, which was received on or after the twentieth of the same month. The check was forthwith mailed back to the defendant, by the plaintiff, with a letter from him acknowledging the receipt of the certificate, and stating that the check was returned because the bonds did not call for any return of interest at the time of conversion. On the 17th of December, 1856, the defendant declared a dividend, by a resolution passed on that day, in the words and figures following, that is to say: "At a meeting of the board of directors of the Terre Haute and Richmond Railroad Company, held Wednesday, December 17th, 1856, it was ordered that a dividend of seven per cent be declared out of the surplus earnings of the road, ending November thirtieth, payable January sixth. It was also further ordered that a stock dividend of twenty per cent, payable in stock and charged to the surplus account; be paid to the holders of stock at the close of the fiscal year, November thirtieth; fractional shares to be paid in cash." Notice thereof was on the same day given in the public journals of Terre Haute, by the secretary of the defendant. The twenty-fourth section of the charter of the defendant provided, among other things, as follows: "Semi-annual dividends of so much of the profits as the corporation may deem expedient, shall be made on the first Mondays of December and July, annually, unless the directors fix on a different day, and pay the stockholders as soon thereafter as they can with convenience." On the 15th day of January, 1856, the board of directors ordered that, thereafter, the fiscal year (which had previously

terminated on the thirty-first day of December) should termi-
nate on the thirtieth of November, and that the dividend be
declared on the business of the board for the six months end-
ing May thirty-first and November thirtieth; and, in pur-
suance thereof, a dividend was declared on June 20, 1856,
payable on the first day of July thereafter.   The court found
that the dividend payable under the resolution of December
17th, 1856, was declared on the stock, business and affairs of
the defendant, as the same stood and were on the thirtieth
day of November in that year.  He also found that between
January and July, 1856, the plaintiff was informed by a stock-
holder in said company, of the above mentioned resolution
of January 15th, 1856.   He also found that the defendant
had, on previous occasions, always closed its books before
declaring a dividend, and that it was a general but not a uni-
versal custom, among companies, to close the books before
declaring a dividend; and further, that the extra stock divi-
dend was declared from earnings from business up to Novem-
ber 30th, 1856.

Upon the preceding facts he found, as conclusions of
law :

1.  That the plaintiff was not entitled to the twenty per cent
stock dividend, and

2.  That he was entitled to the seven per cent cash dividend
with interest thereon.

Judgment was entered in accordance with that decision.
Both parties appealed.

*R. B. Roosevelt* for the plaintiff.   No delay in the
formal issue of the stock would prejudice plaintiff, nor is
such issue necessary to invest him with the rights and liabili-
ties of a stockholder.  (*Chaffiin* v. *Cummings*, 2 Heath, 76 ;
*Ham., etc., Plank R. Co.* v. *Rice*, 7 Barb., 157 ; *Thorp* v.
*Woodhull*, 1 Sand. Ch., 411.)  All dividends declared by a
corporation must be general on all the stock.  (*Ryder* v. *Alt.,
etc., R. R. Co.*, 13 Ill., 516, 520 ; *Reese* v. *Bk. of Mont. Co.*,
31 Penn. St., 78 ; *Luling* v. *At. M. Ins. Co.*, 45 Barb., 510,

514; *Jones* v. *T. H. and R. R. R. Co.*, 29 id., 353; *March* v. *East. R. R. Co.*, 43 N. H., 515, 520; *Phelps* v. *F. and M. Bk.*, 26 Conn., 269.) Plaintiff can sue for damages to be measured by the amount of cash and interest and the market value of the extra stock. (*Com. Bk.* v. *Kortright*, 22 Wend., 348; 31 Penn. St., 78.)

*Charles P. Kirkland* for the defendant.

LOTT, Ch. C. It is unnecessary to decide whether the closing of the stock and transfer books of the defendant on the 30th day of November, 1856, and continuing them so closed for fifteen days thereafter, precluded the conversion of the plaintiff's bonds into stock of the company during that time. Assuming, but not conceding that it did, the fact is wholly immaterial. The dividends in question were not declared until the seventeenth day of December, and the books having been re-opened on the day previous, the conversion thereupon became operative in any view of the case. This result or effect was recognized and declared by the defendant's transmission, on that day, by mail to the plaintiff, of the certificate for the eighty shares of stock, to which he had become entitled on the surrender of his bonds. He was, therefore, a stockholder, owning the said shares, on the day the dividend was declared. There was no classification of stockholders, distinguishing those who held stock under and by virtue of an original subscription to the capital, from such of them as had become holders thereof by conversion of bonds given in exchange for it. All of them stood in the same relation to the company without any preference as between each other. They were the parties beneficially interested in the property belonging to it, whether resulting from the capital contributed or the profits that had accrued from its business or otherwise; but, until a division of such profits was made, and a dividend thereof was declared to be payable as the result of such division, no right to any part thereof was vested in any individual stockholder as his own separate property. This principle is recognized

by the charter of the defendant. It declares, that semi-annual dividends of so much of the profits as the corporation may deem expedient, shall be made on the first Mondays of December and July annually, unless the directors shall fix a different day, which shall be paid to the stockholders as soon thereafter as such payment can be made. This provision not only shows that the amount of profits to be divided, and the time of such division are left to the discretion of the directors; but it clearly contemplates that such dividends, when made, shall be payable to those parties who are stockholders at the time of making them. No discrimination or distinction of any kind whatever between them is made. The ownership of the stock necessarily carries with it the right to all the advantages and benefits incident thereto. It follows, that the plaintiff, as the owner of the stock which he had acquired by virtue and in consequence of the surrender of his bonds, when the dividends in question were declared, was entitled to participation ratably with the other stockholders in the division of the profits which were then divided, unless the facts to which I shall now refer deprived him of that right, or qualified it in any degree.

It appears, that the defendant's board of directors, on the 15th day of January, 1856, passed a resolution that thereafter the fiscal year (which had previously terminated on the thirty-first day of December), should terminate on the thirtieth of November, and that the dividends should be declared on the business of their road for the six months ending May thirty-first and November thirtieth; and the judge who tried the issues, in his finding of facts, has found that the plaintiff was aware of that resolution before he sent his bonds to the company for conversion into stock. He also found, that the dividends declared on the 17th day of December, 1856, as above mentioned, were declared on the stock, business and affairs of the defendant as the same stood on the thirtieth day of November in that year; and that the extra stock dividend was declared from earnings from business up to November 30, 1856. It is claimed, on behalf of the defendant, that those facts, in con-

nection with the fact that the stock and transfer books of the
defendant were closed on the last mentioned day, and con-
tinued so closed for fifteen days thereafter, entitled those
parties only, who were stockholders at the end of the fiscal
year, to a dividend of the profits then accrued. I am
unable to give such effect to those facts. That resolution
was very proper for the government of the directors in mak-
ing an annual statement of the business of the company, and
determining when it was expedient to declare dividends out
of the profits resulting from its business; and, for the purpose
of ascertaining the amount thereof, to fix a day on which
the estimate of those profits, as shown by its books, should
be made. Having adopted such estimate as the means of
determining what sum it was expedient to distribute among
the stockholders, it may be considered to have been a
very proper regulation that no stock should be transferred on
its books for a limited time, so that a ratable apportionment
of the amount to be distributed could be made among those
who appeared to be the owners of the stock, on the day the
dividend was declared. Such a regulation would be useful
to prevent the confusion and embarrassments that would
follow frequent transfers during the time the apportionment
was being made, provided the dividends were, in fact, declared
during the time the books were closed; and it may be, that
sharp-sighted directors, of peculiar and extraordinary finan-
cial skill and ability could see a necessity and propriety of
closing the books for a certain and definite time, and, never-
theless, as was done by the defendant, postpone the making
of the dividends for two days after they were re-opened,
during which time, a transfer to an unlimited extent could
be made, but, I confess, that the efficacy or utility of such
action is not apparent to me.

It is also claimed, on behalf of the defendant, that the
allowance of the plaintiff's claim would be unjust and a
wrong to those who were stockholders on the thirtieth
November, as they would thus be obliged to share the profits
made up to that time, with him who had run none of the

risks of the business during the six months ending on that day. I am unable to see any injustice in such a proceeding or action. The same result would have followed if the conversion had been made on the twenty-ninth of November, and the plaintiff thereby became a stockholder on that day. It may moreover, be said, that if the defendant had sustained losses after the plaintiff became a stockholder, to an amount that would have rendered his stock worth much less than the bonds given in exchange therefor, he would have been obliged to bear the loss himself. It is sufficient, however, to say that such considerations cannot affect the plaintiff's legal rights. They are to be ascertained and determined by the terms of the bonds entitling him to the stock, and not by the consequences resulting from the acceptance of it; and there is nothing in the facts to which I have referred that justified or allowed the defendant to exclude the plaintiff from a participation, proportionate to such stock, with the other stockholders in the profits to be divided on the day the dividends were declared. The resolution declaring them, on a fair, and as I think, the only construction that can be claimed to be given to it, included the plaintiff among the stockholders entitled to the cash dividends. It was in that respect general, making no discrimination or difference between any of the stockholders. The only limitation or restriction, imposed in reference thereto, related to the earnings from or out of which they were declared, but it made no designation in terms of the holders of the stock at the time the books were closed, or on any day before the passage of the resolution, as the parties entitled thereto; and it may be inferred, from the fact that the stock dividends were made payable to those only, who were such holders at the close of the fiscal year, that there was no limitation as to the cash dividend intended.

The judge who tried the case, therefore, correctly decided that the plaintiff could recover it, and the judgment entered in accordance therewith was right, and that in affirmance thereof by the General Term, should be affirmed, with costs of the appeals to the plaintiff. The judgments, so far as they

disallowed the stock dividends, were erroneous, and must be reversed, and a new trial in reference to the claim therefor is ordered with costs to abide the event.

REYNOLDS, C.   It was, unquestionably, the purpose of the plaintiff to convert his bonds into the stock of the company before the 30th of November, 1856.   If he had accomplished this purpose it cannot, I think, be doubted but that he would have been entitled to participate in the cash and stock dividends subsequently declared upon the stock and business of the company for the six months ending on the day named. If, in this, he would have gained any substantial advantage to himself beyond that enjoyed by any other of the stockholders, there could have been no just ground of complaint for his right to do, as he intended to have done, was nominated in the bond.   The money which the holders of bonds loaned to the company was doubtless employed to enlarge its business and enhance the value of its stock, and it was the privilege of the plaintiff at any time to change his position as a creditor to that of a stockholder in the company upon the surrender of his bonds according to their tenor and effect. Contrary to his expectations, the plaintiff's bonds did not reach the office of the company for conversion into stock until the 3d day of December, 1856, after the transfer books had been closed, preparatory to making the usual semi-annual dividends; and of this the plaintiff was immediately advised. On the sixteenth of December a certificate of eighty shares of the defendant's stock, dated on the third, was forwarded to the plaintiff by mail, and on the 17th of December, 1856, the directors of the company declared a cash dividend of seven per cent and an extra dividend of twenty per cent, payable in the stock of the company, " on the stock, business and affairs of the company as the same stood and were on the said 30th day of November, 1856."

The question whether the plaintiff was legally entitled to both or either of the dividends thus declared is not free from difficulty, and mainly depends, I think, upon the power of

the directors of the company in declaring a dividend to discriminate between its stockholders for any reason whatever, and it is not important to consider whether the plaintiff is to be regarded as a stockholder on the 3d or on the 16th of December, 1856, for, in either case, he was a stockholder before the dividend was actually declared. No such power of discrimination is conferred by the charter of the company ; and if it can be said to exist at all, it must rest upon general principles of law. It is certainly true, as a general rule, that a stockholder in a corporation has an interest, in proportion to his stock, in all the corporate property, and has a right to share in any surplus of profits arising from its use and employment in the business of the company ; and this legal right does not depend upon the question whether he is a stockholder of long standing or of recent date. The moment a person becomes a stockholder in a corporation all the incidents of interest or *quasi* ownership in the corporate property attach. Where stock is transferred from one person to another, no question could be made as to the right of the stock to participate in any subsequent dividend ; and I do not discover that there can be any difference between stock obtained by the conversion of bonds and stock which has long existed and transferred on the books of the company immediately before the declaration of a dividend. It was, as before said, the right of the plaintiff to convert his bonds into stock whenever he elected to so do ; and when stock for his bonds was issued to him he was equal in right, to the amount of his stock, with every other of his associate stockholders, and I am unable to discover any principle by which the directors had authority to make any discrimination between them. If such a rule should be approved it might result in very great disasters to holders of corporate stock. Unless in some way restrained by legislation the power to discriminate would rest in the discretion of the directors and be liable to very great favoritism and abuse.

The circumstance that the directors have adopted some particular day as the close of the corporate fiscal year, or that special days are adopted for declaring dividends, or that it is

found convenient to close the transfer books for any purpose does not, in any way, impair the legal rights of a stockholder to share in dividends subsequently declared, although the closing the books would, to some extent, embarrass the transfer of stock. (*Jones* v. *Terre Haute and Richmond R. R. Co.*, 20 Barb., 353 ; *Luling* v. *The Atlantic Mutual Ins. Co.*, 45 id., 510, 514; *Phelps* v. *The Farmers' Bk.*, 26 Conn., 269 ; *March* v. *Eastern R. Co.*, 43 N. H., 515 ; *Foote*, appellant, 22 Pick., 299, 304 ; *Grange* v. *Bassett*, 98 Mass., 462 ; *Rider* v. *The Alton, etc.*, *R. R. Co.*, 13 Ill., 516, 520 ; *Reese* v. *Bk. of Montgomery Co.*, 31 Penn. State, 78.)

As has been said, before a dividend is declared, all the property of the corporation belongs, in fact, jointly to all the stockholders, the legal title being in the corporate body and its affairs managed by the directors as trustees for the stockholders. After a dividend is declared, each stockholder has a right in severalty to his particular proportion ; and this right cannot, I think, be abridged by any discrimination of the directors in any form whatever (*Coles* v. *Bk. of England*, 10 Ad. & Ell., 439 ; *Feistel* v. *King's College, Cambridge*, 10 Beav., 491 ; *City of Ohio* v. *Clev. and Toledo R. R.*, 6 Ohio St., 489 ; *Carpenter* v. *N. Y. and N. H. R. R.*, 5 Abb. Pr., 277 ; *King* v. *Patterson and H. R. R. R.*, 29 N. J. [5 Dutch.], 82 ; *Brown* v. *Lehigh Coal and Nav. Co.*, 9 Penn. St., 270 ; *Granger* v. *Bassett*, 98 Mass., 462), and an action may be maintained against the company for a refusal to pay after demand.

It is sufficient in this case that the bonds of the plaintiff had been converted into stock before the dividends in question were declared, and, I think, the plaintiff was entitled to recover both, and judgment should be rendered accordingly.

EARL, C. (dissenting). The plaintiff was entitled to have his bonds converted into stock whenever he should demand it, and deliver his bonds at Terre Haute, at the office of the company. He chose the agency of the mail to make the demand and delivery; and, although he mailed the bonds

on the twenty-sixth of November, they did not reach
the defendant's office until the third of December; and
hence, they were not delivered to the company for con-
version until that day. For the purposes of this action,
therefore, the plaintiff must be treated as if he had delivered
the bonds, demanded their conversion, and received his stock
on that day. The plaintiff cannot maintain this action
upon the theory that a dividend was actually declared to
him upon his stock, because the justice has found, upon facts
abundantly warranting it, that the dividend was declared upon
the stock of the company as it stood on the thirtieth day of
November. The action must then be maintained, if at all,
upon the theory that a wrong was done the plaintiff by not
including his eighty shares in the stock upon which the divi-
dend was declared; and that involves the question whether
he was legally entitled to a dividend upon his stock from the
profits and surplus earned before the stock was in existence.
Upon what principle is he legally or equitably entitled to
such a dividend? Prior to December third he was a creditor
of the corporation, and not, as to this stock, a member.
Neither his capital nor his skill had in any way contributed
to the profits which had been earned; they had been earned
by the capital and skill of others, and upon every principle
of equity and justice, it seems to me, belonged to the other
stockholders. On the third of December he was entitled to
become a stockholder; but it does not follow that that gave
him the right to share in all the profits that had been earned
up to that time. He was informed by the company, before
his bonds were converted, that he would not share in those
profits, and he took his stock with this knowledge. How can
he justly complain? The company had agreed that he could
take stock at par for his bonds; and it would follow that
from the time he became a stockholder he would be entitled
to all the privileges and benefits of a stockholder, on a foot-
ing of equality with his associates. But the company never
agreed with him, and it is not implied, from what they did
agree, that when he became a stockholder, his rights should

reach both backward and forward, and he should be entitled to share in the profits which had been earned while he was a creditor of the company, receiving interest upon his bonds. I infer that plaintiff had been paid the interest upon his bonds, to September, for three months of the period for which the cash dividend was declared. Suppose his interest for six months had fallen due and been paid December first, could he the next day have demanded a conversion of his bonds and a share in a dividend to be made for the same time? It seems to me clearly not.

The directors of this company were its general agents and trustees for the management of its business, and, in the exercise of their discretion, as an inducement to the conversion of the bonds, they probably had the right to agree with the plaintiff that he might share with all the other stockholders in the profits which had been earned; and such an agreement would not have involved a breach of trust on their part. But they did not, and were not obliged to make, such an agreement, and were guilty of no breach of trust in refusing to permit the plaintiff thus to share.

I do not see upon what theory the courts below could allow the plaintiff to share in the cash dividend and not in the stock dividend. His right to each depends upon precisely the same principle; and if he was entitled to either he was entitled to both. It is probable that the difference was made because of the wording of the resolution as to the cash dividend. The resolution, in terms, confined the stock dividend to those who were stockholders on the thirtieth of November; whereas the cash dividend is general. But the resolution is not a record nor a contract which cannot be contradicted or explained; and the facts of the case showed and the justice expressly found, that both dividends were declared upon the stock as it existed November thirtieth.

In any view, therefore, I can take of this case, the plaintiff was not entitled to either of the dividends, and the judgment should be reversed and new trial granted, costs to abide event.

For judgment in accordance with opinions of LOTT, Ch. C., and REYNOLDS, C., LOTT, Ch. C., REYNOLDS and DWIGHT, CC.

For the reversal, EARL and GRAY, CC.

Judgment affirmed as to cash dividend, and reversed and new trial granted as to stock dividend.