Ashbrook v. Letcher.

JULIA A. ASHBROOK *et al.*, Appellants, v. GILES C. LETCHER, Respondent.

St. Louis Court of Appeals, May 13, 1890.

1.   Bills and Notes : BURDEN OF PROOF.   In an action on a note by an indorser against the maker, the plaintiff establishes a *prima facie* case by producing and offering in evidence the note with the indorsement of the payee.

2.   Payment : EVIDENCE.   Payment may always be proven by inferential evidence.

3.   Witnesses : COMPETENCY OF PARTY.   The maker of a promissory note is not a competent witness in a suit thereon against him by an indorsee, if, at the time the payee of the note, who was also an indorser, is dead ; and this rule is so though such payee was merely an accommodation indorser, and was, moreover, subsequently released from liability through the failure of the holder to make due presentment of the note for payment.

*Per Thompson, J., dissenting.*

4.  ——— : ———.  If a note be by the payee indorsed for the accommodation of the maker, and the note given is directly by the maker to a third person in payment of a liability of the maker to such third person, such payee, though in form a contracting party, is not one in substance, and if the payee, moreover, is released from liability on the note through the absence of any presentation of it for payment at its maturity, his death will not render the maker an incompetent witness in a suit against him on the note by an indorsee, especially when the testimony of the maker is not antagonistic, but is favorable, to the payee, as if its sole tendency be to show that, prior to the acquisition of the note by the plaintiff in the suit, the note was paid out of funds of the payee at her direction.

*Appeal from the St. Louis County Circuit Court.*
HON. W. W. EDWARDS, Judge.

REVERSED AND REMANDED.

*Zach. J. Mitchell,* for appellants.

(1) The verdict was against the evidence, and wholly without evidence to support it; and plaintiffs' motion should have been sustained upon this point. (2) That the deposition of defendant, admitted upon and after proof of the death of Mrs. Julia A. Letcher in 1884, was clearly inadmissible, is *res adjudicata,* since the cases of *Meier v. Thieman,* 90 Mo. 442; *Ring v. Jamison,* 66 Mo. 424; *Angell v. Hester,* 64 Mo. 142; 1 Whart. Ev., sec. 466; *Chapman v. Dougherty,* 87 Mo. 609; 1 Greenl. Ev., secs. 392, 386, 390.

*John N. Straat,* for respondent.

ROMBAUER, P. J.—The plaintiffs brought a suit by attachment against the defendant, who is a non-resident, upon two promissory notes. One of the notes was paid by consent, out of the proceeds of the attached property before trial, leaving only the issue to be tried, whether

the plaintiffs were entitled to recover on the remaining note.

The plaintiffs' petition states that this note was a negotiable note for six hundred dollars made by the defendant on April 22, 1875 ; that he thereby promised to pay said sum to Julia A. Letcher, sixty days after date thereof, with interest from maturity at the rate of ten per centum per annum ; that Julia A. Letcher assigned it in writing to John A. Nies, and that Nies assigned it in the same manner to the Market Street Bank, and that the Market Street Bank sold and transferred it to one Charles Bobb, who again sold and transferred it to the plaintiff, Julia A. Ashbrook. The petition further states that no part of said note had ever been paid, and prays judgment for its amount with interest.

The answer admits the making of the note, and its successive transfers, until it reached the Market Street Bank, but denies that the plaintiffs ever had any right, title or interest in it, and further avers that the note had long since been fully paid. On the issues thus made the parties went to trial, which, under the instructions of the court, resulted in a verdict in favor of the defendant.

The only substantial errors assigned are that the verdict is wholly unsupported by the evidence, and that the court admitted illegal evidence for the defendant against the objection of the plaintiffs.

The production of the note in court, with the indorsement of the payee thereon, constituted *prima facie* evidence of ownership in the plaintiff (*Mechanics' Bank v. Wright*, 53 Mo. 153 ; *Rubelman v. McNichol*, 13 Mo. App. 584) ; also *prima facie* evidence that it was acquired in good faith and in the regular course of business. *Grelle v. Loxen*, 7 Mo. App. 97. This made a *prima facie* case of a right of recovery, which could be overcome only by evidence to

the contrary. *Lachance v. Loeblein*, 15 Mo. App. 460. This evidence, however, need not be direct, as payment may always be proved by inferential evidence. 2 Green-leaf on Evidence, sec. 528.

The evidence of the defendant was all of an infer-ential character, and did not attempt to prove a direct payment of the note. The defense sought to be estab-lished was two-fold : *First.* That Bobb *paid* the note to the Market Street Bank upon the request either of the defendant or of his mother, and that thereby the note was extinguished as a subsisting cause of action, and that any action which Bobb thereafter had, or could transfer to any one, was not an action upon the note, but only an action for money paid at the request and to the use of the defendant. If this were established, there could be no recovery in this form of action, regardless of the question whether Bobb paid the note with his own money or not, since the note would have been paid and extinguished as a note, and its subsequent transfer would have been a transfer of dead paper.

The *second* branch of the defense was that Bobb not only paid the note, but paid it upon the request of the payee for the defendant, either with the moneys of the payee in his hands when he paid it, or else reim-bursing himself out of such moneys prior to the assign-ment of the claim to the plaintiff. If this were established, the plaintiff could not recover in any form of action, since Bobb himself would have had no cause of action whatever against the defendant at the date of the alleged assignment to plaintiff, and, therefore, could assign none.

To establish these defenses, the defendant adduced evidence tending to show that the note matured in the summer of 1875, and that the defendant did not leave this state until the fall of 1875 ; that he was possessed of valuable real estate in the city of St. Louis, part of which in January, 1875, he conveyed to Bobb, as trustee

for his wife and children, love and affection being the only consideration of the deed; that, in 1882, while Bobb was still, according to his claim, the holder and owner of this note, the defendant conveyed to him another piece of real estate in St. Louis in trust for his wife and children, the consideration of the deed being love and affection; that, while Bobb was the holder of this note, the defendant became a distributee of his brother's estate, of which Bobb was executor, and that his distributive share was much more than one hundred dollars; that Bobb claimed to have acquired this note before maturity in 1875, took no steps to charge the indorsers thereon, and sold it in 1887, with accrued interest for one hundred dollars; that Bobb was the agent of the defendant's mother, the payee of the note, prior to and after the maturity of this note, and collected rents for her both before and after he claimed to have acquired it, and that, owing to his connection with the family, he was in a position to be thoroughly informed, from the time he claims to have acquired the note until its transfer to the plaintiffs, of the fact that the note was collectible, and yet made no efforts to collect it.

On this evidence, we are not prepared to say that there was not substantial evidence authorizing the jury to infer either that Bobb *paid* the note and did not buy it, or that he not only paid it, but was, also, reimbursed for the outlay, either of which facts was fatal to plaintiffs' recovery in this form of action. The assignment that the verdict is not supported by substantial evidence must, therefore, be ruled against the plaintiffs, even if we reject the defendant's deposition hereinafter mentioned.

The next assignment is that the court admitted, against the plaintiffs' objection, the deposition of the defendant, taken in his own behalf, in May, 1883, several years after the death of Julia A. Letcher, the payee

and other party to the contract. The deposition, when offered, was objected to on the specific ground that, when it was taken, the payee of the note was dead, and and, hence, under the statute, the maker, who was both a party in interest and a party to the record, was an incompetent witness in his own behalf. The court, in overruling this objection, must have held either that the defendant was not *the other party* to the contract, within the meaning of the statute, or that, although not competent to testify to the contract itself, he was competent to testify to facts subsequently transpiring touching the contract between himself and the payee, or himself, the payee and third parties. Either of these views was erroneous.

The statute provides that, in actions where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party shall not be admitted to testify in his own favor ( subject to certain exceptions ). The supreme court has construed this section to mean that it contains another exception, namely, where persons were competent to testify at common law.

The non-liability of Mrs. Julia A. Letcher upon the contract would have made her a competent witness at common law, because she was neither a party to the record nor a party in interest, and could not be excluded on either ground. She stands upon the same footing as if her competency had been established by release. *Steigers v. Gross*, 7 Mo. 261 ; *Hogg v. Breckenridge*, 12 Mo. 369 ; *Long v. Story*, 13 Mo. 4. But, how does the fact that she is released affect Giles C. Letcher, who is incompetent to testify at common law, both as a party in interest and as a party to the record ?

In *Ring v. Jamison*, 66 Mo. 429, Judge HENRY approves of the definition of Judge WELLS, in *Granger v. Bassett*, 98 Mass. 462 : " The test of competency is the contract or cause of action in issue and on trial, not the

fact to which the party is called to testify." This we consider still to be the law of this state, so that the fact, concerning which the defendant was called upon to testify, could not make him competent, if he was otherwise incompetent. Julia A. Letcher was, unquestionably, one of the *other parties* to the note. The defendant's promise was made to her, and that is the promise which she assigned, and upon which the plaintiff now seeks to recover. That she indorsed the note for the defendant's accommodation cannot affect the question, as that did not in any way constitute her a joint promisor, but her rights and liabilities on the note still remained as they were determined by her position thereon. *Deits v. Corwin*, 35 Mo. 376 ; *McCune v. Belt*, 45 Mo. 174.

It is important that the rules governing the competency of witnesses should be simple and easily understood. The rule stated in *Granger v. Bassett*, and approved in *Ring v. Jamison, supra*, is one that is clear and comprehensive, and makes the defendant Letcher an incompetent witness in this case. If we attempt to modify the rule in each case as its apparent equities seemingly demand, we must abandon a clear and comprehensive rule and substitute for it the varying views of judges in individual cases, a practice which tends to make the law uncertain and, hence, necessarily unjust. The evidence thus admitted was, undoubtedly, prejudicial to the plaintiffs, and, on account of this error, the judgment must be reversed and the cause remanded. So ordered. Judge BIGGS concurs ; Judge THOMPSON dissents.

THOMPSON, J. (*dissenting*)—This is an action upon a promissory note for the principal sum of six hundred dollars and accrued interest at the rate of ten per cent. per annum, executed on the twenty-second day of April, 1875, by the defendant, Giles C. Letcher, in favor of Julia A. Letcher, and indorsed by Julia A.

Letcher and also by one J. A. Nies. The petition alleges that the defendant made and delivered the note to Julia A. Letcher, who indorsed and delivered it to J. A. Nies, by whom it was indorsed and delivered to the Market Street Bank; that subsequently the bank *sold*, transferred and delivered the note for value to Charles Bobb, who afterwards sold, transferred and delivered the note for value to the plaintiff, Julia A. Ashbrook, and that the note is unpaid.

The defendant in his answer admits the allegations of the petition so far as concerns the making and delivery of the note to Julia A. Letcher, its indorsement by her, its subsequent indorsement by Nies, and its delivery to the Market Street Bank; but denies that the bank sold, transferred and delivered the note to the plaintiff, Julia A. Ashbrook, and avers affirmatively that the note had long since been paid, and that the plaintiffs have no right, title or interest therein.

A trial before a jury resulted in a verdict and judgment for the defendant, and the plaintiffs prosecute an appeal to this court.

The evidence showed that Julia A. Letcher, who was in form the payee of the note, was the mother of Julia A. Ashbrook, the plaintiff, and also of the defendant, and the sister of Charles Bobb; that Julia A. Letcher died in 1884; that she was the nominal payee and the indorser of this note for the accommodation of her son, this defendant, and that Nies was also an accommodation indorser; that the note was thus made and indorsed for the purpose of taking up in part a debt of twelve hundred dollars, which the defendant then owed the Market Street Bank, the other half of the debt being paid in cash. It further appeared without dispute that the note was never protested for non-payment, and that it was not indorsed by the Market Street Bank when it was turned over to Bobb, or by Bobb when he turned it over to the plaintiff, Mrs. Ashbrook. Concerning these facts there is no controversy.

Ashbrook v. Letcher.

The theory of the defense was that Bobb *paid* and satisfied the note for Mrs. Letcher, the mother of the defendant, and did not pay it or acquire any title to it, and that Mrs. Letcher never regarded the note as an existing claim against her son, the maker; that Bobb held the note for twelve years without making any effort to enforce collection of it, and until some time after death had sealed the lips of Mrs. Letcher, and then transferred it to Mrs. Ashbrook for the purpose of reviving it as a cause of action against the defendant. On the other hand, the theory of the plaintiff was that Bobb, at the request of the defendant, the latter not having money to take up the note when it matured, and promising Bobb to refund him the money which he should advance in taking it up, went to the Market Street Bank and *purchased* it of the bank and took it up and held it, expecting that the defendant would pay it in his hands, but did not pay it, in a legal sense, over the counter of the bank. The transaction took place in June, 1875, and in the fall of that year the defendant emigrated to California, and has been a non-resident of the state ever since. Reasons were offered by the plaintiff, through the mouth of Bobb as a witness, why Bobb had made no efforts, during these twelve years, to collect the note, upon the sufficiency of which we shall make no comments, as it presented a question of fact for the jury.

The errors assigned are: *First.* That the verdict is against the evidence. *Second.* That the court erred in admitting the deposition of the defendant, the other party to the contract, Julia A. Letcher, being dead. *Third.* That the court erred in the instructions given for the defendant.

I. The possession of the note uncanceled by the plaintiff, Mrs. Ashbrook, its execution being admitted, was *prima facie* evidence of her title to it, and that it was a subsisting liability of the defendant. The burden of showing a state of circumstances discharging that

liability rested upon him, in conformity with the rules that the burden of proving payment is on the defendant. *Yarnell v. Anderson*, 14 Mo. 619. This state of facts might be shown by circumstantial as well as by direct evidence. Here there were strong circumstances tending to the conclusion that the note either had never been a liability in the hands of Bobb in his own favor, or else, if it had, that such liability had been discharged by Mrs. Letcher. He had held it for some twelve years. During most of this time the defendant had, it is true, been a non-resident of the state, but there was evidence tending to show that he had property in St. Louis out of which the note could have been made. Again, when Bobb took up the note, he was the agent of Mrs. Letcher, the nominal payee and accommodation indorser, collecting rents belonging to her of the aggregate value of eighteen hundred dollars a year. The jury were fairly entitled to consider these circumstances, in determining the question whether he had taken this note up before maturity with his own money at the request of the defendant, and had allowed his sister, Mrs. Letcher, who was an indorser upon it, to become released by operation of law by failing to make demand upon the maker and give her notice of its dishonor, or whether he had taken it up with her money, or with his own money and had afterwards reimbursed himself out of her funds,—she being liable upon it.

II.   Nor do I think that the court committed error in admitting the deposition of the defendant against the objection of the plaintiffs, grounded upon the fact that Mrs. Letcher, the payee of the note, was dead. Mrs. Letcher is shown by the evidence, and without controversy, to have been an accommodation indorser of the note; and the note is shown, without controversy, to have been given to the Market Street Bank to take up another indebtedness. When the witness Bobb took the note out of the bank, either before or at maturity,

and failed, when the note matured, to make demand
of payment on Letcher and notify Mrs. Letcher, she
became discharged as an indorser, and passed out of
the contract, as effectually as though she had never been
a party to it. She thereby ceased to have any legal
interest in the note in any manner whatever. The
statute could not have been intended to disqualify a
living witness in such a case.

But aside from this, although Mrs. Letcher was,
*in form,* "the other party" to the note, within the
language of the proviso of section 4010, of the Revised
Statutes of 1879, she is shown by the undisputed evi-
dence not to have been the other party *in substance.*
In substance the parties to the contract ranged them-
selves thus: The defendant, Mrs. Letcher, and the
other accommodation indorser Nies, on the one side,
and the Market Street Bank, to whom the note was
delivered to take up the antecedent indebtedness, on
the other side. If Mrs. Letcher had taken up the
note upon it and her personal representative were here
suing, then the statute and the reason of it would
apply, so as to exclude his evidence. The case does not
fall within the reasoning of *Meier v. Thieman,* 90 Mo.
433, and other cases which have preceded and followed
that decision.

The statute ( R. S. 1879, sec. 4010 ), after providing
that parties shall not be disqualified from testifying as
witnesses, contains this proviso, creating an exception
to the rule thus established: "Provided, that in
actions where one of the original parties to the contract
or cause of action in issue and on trial is dead, or is
shown to the court to be insane, the other party shall
not be admitted to testify in his own favor." This
statute has been the subject of many adjudications, and
no very consistent line of interpretation can be deduced
from the decisions. Some of them have been overruled
in terms, by subsequent decisions; others have been

overruled without mentioning them. The supreme court started out by drawing attention to the purpose of the statute, which abolished the common-law rule of exclusion and retained the above exceptions to the new rule thus created. In the first opinion in which the statute was construed, it was said : "The great object and purpose of the law was to destroy the restrictions and incapacities which operated as rules of exclusion by the law of evidence, and to permit every person, inclusive of parties, to give evidence; to allow all, without regard to interest, even though they were parties to the suit, to disclose all the facts within their knowledge or possession, and let whatever credibility they might be entitled to be passed upon by the jury. This may be calculated to draw forth the truth, though we entertain serious doubts about the wisdom of the enactment. But it was seen that, where one of the parties was dead, or disqualified by reason of insanity, that the parties would not stand on an equal footing ; he would be unable to oppose his oath to that of the opposite party, and, therefore, the party living or sane was precluded from testifying." *Stanton v. Ryan*, 41 Mo. 514. In the next decision in which the construction of the statute came before the court, the reason of the exception which the legislature reserved to the new rule which it thus created was again pointed out,—that it was to prevent the living party from having "an undue and unfair advantage." *Looker v. Davis*, 47 Mo. 140, 146. "The object of the law," said the court, in the next case in which the statute came before them, "was to prevent one party from testifying to a contract in issue, where the lips of the other party were closed, so that his version of the contract could not be given." *Poe v. Domec*, 54 Mo. 119, 124. The language of the judges in many other decisions emphasizes this purpose of the statute. *Chapman v. Dougherty*, 87 Mo. 616, 623 ; *Fulkerson v. Thornton*, 68 Mo. 468, 469 ; *Coughlin*

*v. Haeussler*, 50 Mo. 126 ; *Berlin v. Berlin*, 52 Mo. 151 ; *Williams v. Edwards*, 94 Mo. 447, 452; *Meier v. Thieman*, 90 Mo. 433, 443.

Such being the purpose of the statute, an effort is discovered on the part of the supreme court so to construe it as to give effect to that purpose. To this end that court has, on the one hand, extended it to cases within its spirit, but not within its letter, and has, on the other hand, denied its application in cases within its letter, but not within its spirit. Thus, it has been held, on the one hand, that where one of two parties jointly found by a contract is dead, the adverse party is not thereby disqualified as a witness in an action on the contract between himself and the survivor. *Fulkerson v. Thornton*, 68 Mo. 468 ; *Nugent v. Curran*, 77 Mo. 323. On the other hand, it has been held that where, in such a case, the transaction has been had with one of two partners who has since died, the opposite party is not competent as a witness to prove what passed between him and the deceased partner in respect of the transaction. *Butts v. Phelps*, 79 Mo. 302. To the same effect see *Williamson v. Perkins*, 83 Mo. 379. So, where the other party to the contract is a corporation, and the corporation has been dissolved, and is hence dead in the sense of the law, this does not disqualify the opposing party as a witness ; since the statute means natural and not artificial death, and refers to the death of persons and not of artificial bodies. *Williams v. Edwards*, 94 Mo. 447, 450. Yet this, it is perceived, is within the letter of the statute, though obviously not within its meaning. On the other hand, if the contracting agent of the corporation, through whom the contract with the corporation was made, has since died, this disqualifies the opposing party to the contract from testifying as a witness, though this is not within the letter of the statute, for it is within its meaning. *Williams v. Edwards*, 94

Mo. 451. Again : A. makes a promise to B., to pay the debts of B. C. is a creditor of B. C. brings an action upon the promise, as he may lawfully do, under the law of the forum. Before the trial, B., the original promisee, dies. This does not disqualify C., since he was not an original party to the contract. *Amonett v. Montague*, 63 Mo. 201. Here C. is allowed to testify, although his testimony in consequence of the death of B., the original promisee, may put A., the defendant in the action and the original promisor, at a disadvantage, because this case is not within the letter of the statute. In the same case it was held that the death of B., the original promisee, did not disqualify A., the original promisor. *Amonett v. Montague*, 75 Mo. 43, 48. Here the case was within the literal terms of the statute ; for B., the promisee who had died, was an original party to the contract, and A., the promisor, was "the other" original party to the contract, and yet the court regarded it as coming within the reason of the decision of *Fulkerson v. Thornton*, above quoted, and as not requiring the exclusion of A. as a witness. On the other hand, in the decision of the supreme court which has probably excited the most attention in this state, *Meier v. Thieman*, *supra*, the witness, Adolphus Meier, whom the supreme court held incompetent, was neither a party to the contract nor to the cause of action which was the subject of the suit; but he was interested in supporting the contention of the defendant, because he was liable to the defendant, in case he should fail in the suit. He was, therefore, regarded, and with some reason, as being within the meaning of the statute.

Decisions could be multiplied, showing the manner in which this statute has been construed and applied by the court of last resort in this state. They would show that scarcely a position has been taken in any one case, which has not been either denied or ignored in

some other case.  That court started out with holding, though with some hesitation, that the statute only applies so as to exclude as a witness one, who is at once a party to the contract, which is the subject of the suit, and a party to the suit itself.  *Looker v. Davis*, 47 Mo. 140.  This decision was long regarded as the law of this state.  *Klosterman v. Loos*, 58 Mo. 290 ; *Martin v. Jones*, 59 Mo. 187 ; *Amonett v. Montague*, 63 Mo. 205 ; *State ex rel. v. Huff*, 63 Mo. 290 ; *Angell v. Hester*, 64 Mo. 143 ; *Bradley v. West*, 68 Mo. 73 ; *Hughes v. Israel*, 73 Mo. 546 ; *Chapman v. Dougherty*, 87 Mo. 622 ; *Priest v. Chouteau*, 12 Mo. App. 260 ; *Pritchett v. Reynolds*, 21 Mo. App. 677 ; *Fyke v. Lewis*, 15 Mo. App. 588.  In all these cases *Looker v. Davis, supra*, was cited with approval, and in some of them its doctrine was applied.  Finally, the supreme court, without citing *Looker v. Davis* at all, overruled that decision, and all the subsequent cases which had followed it, in an opinion in which the court said that "the rules of evidence should not, like the color of the chameleon, change because of their fortuitous surroundings. *Meier v. Thieman*, 90 Mo. 433, 443 ; reversing s. c., 15 Mo. App. 307.

In one case the supreme court undertakes to lay down a technical rule which, if followed, would probably determine in every case, without much doubt, whether the witness is competent or incompetent,—the determination in some cases complying with, and in others opposing, the spirit and meaning of the statute. That rule was thus stated:   "We take the true distinction to be that, where one of the original parties to the contract or cause of action in issue and on trial is dead, the other party to such contract or cause of action will not be permitted to testify to any fact which he would not have been permitted to testify to at common law ; that, where one of the parties is dead, the other party stands in regard to testifying precisely as if the statute

allowing persons to testify (parties was intended) had not been enacted." *Angell v. Hester*, 64 Mo. 142; again quoted in *Meier v. Thieman*, 90 Mo. 433, 442. If the court had laid this down as a deliberate test for the decision of all cases, we should be bound by it, at least until that court should change it. But, as I have shown above, although this test was laid down as early as the sixty-fourth volume of the reports of the supreme court, that court has not adhered to it with any considerable uniformity.

I do not question the doctrine that the rule may be invoked in favor of a party to an action, who claims under or through the deceased party to the contract which is the subject of the action so as to exclude the other party to the contract from testifying as a witness. This, I take it, must be accepted as the law since the decision of *Chapman v. Dougherty*, 87 Mo. 617. See also *Carter v. Prior*, 8 Mo. App. 577. Thus, where the devisee of land brings an action of ejectment, supporting his title by a deed from the defendant to his testator, the defendant will be incompetent to testify as to the non-delivery of the deed, because the other party to the contract, namely the testator, is dead,—and the rule may be invoked by a party claiming the land through him. *Chapman v. Dougherty*, *supra*. So, if the plaintiff in an action is the heir and legatee of one, between whom and the defendant the contract in controversy was made, the defendant, for a like reason, will not be competent as a witness. *Carter v. Prior*, *supra*.

I take it that this principle would furnish the rule for the decision of the present case if the note, which is the foundation of the action, had been given by the defendant to his mother, Mrs. Letcher, *for value*, and by her indorsed to Nies, and by Nies to the Market Street Bank, and by the bank to Bobb, and by Bobb to the plaintiff; since, in that case, the plaintiff would claim through Mrs. Letcher, and the death of Mrs.

Letcher would disqualify the defendant on the princi-
ple of the two cases last cited, the defendant being "the
other party to the contract," when contrasted with her.
But here, Mrs. Letcher being merely an indorser for the
accommodation of Letcher, as shown by the testimony
of Bobb, as well as by that of Letcher, the principle
does not seem to apply. They never became, unless she
and not Bobb paid the note, in respect of each other,
opposing parties to the same contract. She was merely
his surety, in the qualified sense that she agreed to be
bound according to the law merchant, provided she had
seasonable notice of the dishonor of the note by him,
or provided facts existed dispensing with such notice.
The real transaction was between Letcher and the bank,
with which this note, made by him in form to his
mother and indorsed by her for his accommodation,
and again indorsed by Nies for his accommodation,
was negotiated to be used in taking up a previous note
which was maturing. The opposing parties to the con-
tract were really Letcher and the bank, in substance
and in sense, and Mrs. Letcher and Nies were mere
sureties. They ranged themselves on the same side of
the contract with him and occupied toward the other
real party to the contract,—none the less really because
its name was not expressed thereon,—a position sub-
stantially similar, so far as this question is concerned,
to that which they would have occupied if they had
written their names on the note successively under his.
As between Letcher and Mrs. Letcher, the latter was
merely his surety. If she had written her name on the
note under his so as to become in form a comaker, and
the note had been assigned by their joint indorsement,
and had thus passed through Bobb to the plaintiff, and
Mrs. Letcher had thereafter died,—then upon the rule
in *Nugent v. Curran*, which was the case where one
of two makers of a note had died,—the defendant would
not have been disqualified as a witness. If the statute

is to be construed according to reason and sense, what different position does she occupy from the mere fact that the note is made nominally payable to her, and by her indorsed to Nies, and by Nies to the bank? But, beyond this, if she had signed the note as a joint maker for the accommodation of Letcher, so that she would not have been discharged by its non-protest under the law merchant, and so that her estate would still be liable, Letcher would nevertheless be a competent witness, although his testimony might incidentally operate to settle a liability upon her estate. But here, when the note, in the hands of Bobb, taken up according to his testimony and also according to Letcher's testimony, was held by him without being protested, Mrs. Letcher passed out of the contract as effectually as if she had never been in it. If, with this fact in view, we recur to the reason of the rule as expressed by numerous decisions—to put the parties to the contract on an equality—we shall see that the reason has no application to this case. For, who are the parties to the contract to be put on an equality? The answer is that Letcher, and Mrs. Letcher, are such parties. But she having ceased to be liable under any circumstances, no disadvantage can accrue to her, or to her heirs or creditors, by permitting Letcher to testify. If the contest were, as in the two cases above cited, between Letcher and her devisee or legatee, or if it were between Letcher and her executor or administrator, then the reason of the rule would apply. But here it is between Letcher and the party who claims to have derived title through her in form merely, and who did not derive title through her in substance.

Moreover, while it is true that "the test of competency is the contract or cause of action in issue and on trial, not the fact to which the party is called to testify." (*Granger v. Bassett*, 98 Mass. 462; *Ring v. Jamison*, 66 Mo. 422, 429), yet, in determining, in a doubtful case,

whether the case is within the statute or not, the character of the testimony should not entirely escape consideration.    Here, the essential fact to which Letcher testified was an alleged declaration of his mother, Mrs. Letcher, made in the presence of Bobb, the plaintiff's immediate assignor, by whose testimony the plaintiff seeks to support her right of recovery.    Bobb, was at that time, as already seen, the agent of Mrs. Letcher, collecting the rents of her real estate and handling her money.    According to the testimony of Letcher, he and Bobb called upon Mrs. Letcher and explained to her that Letcher would not be able to take up the note at maturity, whereupon Mrs. Letcher directed Bobb to take it up with her money.    This is the substance of Letcher's testimony, and it is the only part of it which has any substantial bearing upon the case, except so much of it as explains that the note was an accommodation note.    His additional statement, as to what his mother subsequently told him, might perhaps have been excluded, if specially objected to at the trial. The testimony of Letcher, as to a conversation that took place with his mother in the presence of Bobb, and as to a direction which she gave to Bobb as her agent, is of a character capable of being rebutted by Bobb, and its admission, therefore, does not place the plaintiff at any disadvantage as against the defendant, any more than the death of any person whose declaration might be competent would have this effect.    If the case were otherwise within the statute, the fact that this was the character of the evidence would not take it out of the statute ; but, if the case is not within the statute, there is nothing in the peculiar nature of the evidence which furnishes an argument for bringing it within the statute.

This case rather falls within the principle of *Dolan v. Kehr*, 9 Mo. App. 351, which holds that the statute has no application to a case where the witness delivers testimony "for and on behalf of the interest that the

deceased had represented, not on his own part and against that interest." "The object of the statute," said Judge HAYDEN, "is to protect the estate from the inequality which would exist if the party opposed to the estate could give his version of the transaction in his own favor," etc. In this case, if the deposition of Letcher is true, it tends to show that he owes the note, not to this plaintiff, but to the estate of his mother. It tends, in connection with other circumstances, to show that Bobb took up the note with her money in conformity with her direction. So much of it as states that she, in conversations with the witness, released him from all obligation to her would have no effect in exonerating him, in an action brought by her executor or administrator upon the note; for it does not show any consideration for the release thus made by her, nor any circumstances which would create an estoppel against her or her personal representative.

The note is, then, a subsisting liability of Letcher, either in favor of the plaintiff or in favor of his mother's estate. The statute was intended to protect the estate of the deceased party to the contract. An interpretation of the statute which closes the mouth of Letcher and at the same time opens the mouth of Bobb, would not operate to protect the estate of Mrs. Letcher, but might operate to defraud it. Such an interpretation would not, in my opinion, be a reasonable and just interpretation of the statute, but it might have the effect of turning the statute from a means of justice into a mere means of fraud.

III. Neither party has offered any argument upon the assignment of error which challenges the instructions. I see nothing in them of which the plaintiff can justly complain. My opinion is that neither the law nor the ends of justice would be subserved by a reversal of this case.