Manufacturers' Bank v. Scofield.

*THE MANUFACTURERS' BANK OF TROY v. LEWIS F. SCOFIELD.

*Witness. Evidence. Estoppel. Promissory Note. Agency. Bank Cashier.*

In an action to recover on a promissory note executed by the defendant, under an agreement that F., the president of the plaintiff bank, at which the note was payable, should pay it at maturity, the defendant was a competent witness to prove this agreement, even after the death of F., the defence being representations of the cashier of the bank to the defendant after protest and notice, which operated to estop the bank from holding the defendant for the note.

The arrangement between F. and the defendant and his brother S., was that the money obtained on the note should be expended by the defendant in the purchase of horses for F., and that when the note, which was payable to the order of S., fell due, F. was to pay and take it up. The note was not paid, was protested, and the defendant and brother duly notified; and on inquiry the next day at the bank was told by the cashier, W., that F. had informed him that he was to pay the note, and to charge it to F., in his account with the bank, which had been done; that it was all right, and they need not give themselves any further trouble about it. The defendant and brother supposed W.'s statement to be true and paid no further attention to the subject, and the defendant relying upon said statements, soon after paid over to F. a large amount of money in his hands belonging to F. It subsequently turned out that F. had not paid the note and it had never been charged to him. F. died some six months after the note fell due, insolvent, Up to his death he was in good credit. No claim was made on the defendant and his brother on account of this note after the notice of protest until a few days prior to F's death. *Held*, that the bank was estopped from prosecuting the note against the defendant.

The contract between F. and the defendant and brother, was not in issue and on trial within the meaning of the statute, providing that one party to a contract shall not testify in his own favor when the other is dead, &c.; therefore the defendant and S. were competent witnesses to prove it by.

By the words " contract or cause of action in issue and on trial," as used in the statute, is meant such contract or cause of action as will be inforced by the proceedings, in regard to which an issue is to be formed, and a trial had, where the rights of the parties to the contract or cause of action will be determined by the result.

W., as cashier of the bank, was its agent, and vested with full authority to transact the business in regard to which the defendant sought information, and the bank was bound by his representations.

It made no difference with the effect of W's representations, though he did not know that the defendant had money belonging to F. which he was going to give up to him, relying upon the truth of W.'s statement.

The fact that the note was not delivered up to the defendant was no ground for the defendant to suppose that F. had not paid it.

*This case was heard at the January Term, 1866.

THIS was an action of assumpsit on a promissory note executed by the defendant, for one thousand dollars, dated at Pittsford, Vermont, August 10th, 1863, and payable in thirty days after the date thereof to the order of C. M. Scofield at the Manufacturers' Bank, Troy, and duly endorsed by the said C. M. Scofield. The plaintiff's declaration also contained the common money and other counts in *indebitatus assumpsit.* Plea, the general issue, and trial by the court, by the consent of the parties at the September Term, 1865, KELLOGG, J. presiding.

Flood was the president of the said bank up to the time of his death, but the bank had no interest in, or connection with, his said contracts for the purchase or delivery of horses.

All of the facts in respect to any contract, dealings or conversation had by the defendant or his brother with Roger A. Flood, as set forth in the opinion, were found to be proved exclusively on the testimony of the defendant and his brother C. M. Scofield, respectively; and, before the testimony of either was taken, it was admitted that Flood was dead, and the plaintiff seasonably objected to the reception of the said testimony of the defendant and his brother C. M. Scofield in respect to any contract, dealings or conversation had by either of them with Flood, but the objection was overruled, and the testimony was received. To which decision the plaintiff excepted. The plaintiff bank had no interest in, or connection with, the contract for the purchase of horses.

The court decided that the defendant was entitled to a judgment, and judgment was rendered in favor of the defendant accordingly. To the said decision and judgment the plaintiff also excepted.

The facts found by the county court are fully stated in the opinion.

*Prout & Dunton* for the plaintiff.

I. The testimony of the defendant and his brother, C. M. Scofield, as to conversations, dealings and contracts with Roger A. Flood, was improperly admitted. G. S. p. 227 § 24; *Byron* v. *McDonald*, 1 Allen 293; *Smith* v. *Smith*, 1 Allen 231; *Hubbard* v. *Chapin*, 2 Allen 328; Gen. Statutes of Mass. 673.

II. The conversation had by the defendant and his brother with

Wellington, the cashier, does not affect the right of the bank to recover in this suit.

An agreement by the president and cashier of a bank that an indorser shall not be liable on his indorsement, or that a surety shall not be called upon, is not binding on the bank.    Angell & Ames on Corp., p. 349 ; *Paine* v. *Com. Bank*, 6 Sm. & Marsh, Miss. R. 24 ; *Bank of Northfield* v. *Howe, Vt.*, (not reported) ; *Franklin Bank* v. *Stewart*, 37 Me. 519 ; *Bank of U. S.* v. *Dunn*, 6 Peters 51 ; *Bank of Metropolis* v. *Jones*, 8 Peters 12 ; *U. S.* v. *City Bank*, Columbus, 21 Howard 356 ; *Highland Bank* v. *Dubois*, 5 Denio 558 ; *Dedham Sav. Bank* v. *Slack*, 6 Cush. 408.

*J. Q. Hawkins* and *C. H. Joyce* for the defendant.

The opinion of the court was delivered by

Pierpoint, Ch. J.    From the facts found by the court below, it appears that the note now in suit was executed by the defendant, payable to the order of his brother, C. M. Scofield, at the said Manufacturers' Bank of Troy, was endorsed by the said C. M. Scofield, discounted said bank on the recommendations of Roger A. Flood, the president of said bank, and the money sent to the defendant, who lived at Pittsford, in this state.

This was done in pursuance of an arrangement between the said Flood and C. M. Scofield, that the money when so obtained should be expended by the defendant in the purchase of horses for the said Flood, and that when the note fell due, the said Flood was to pay and take up the same ; this was understood by the defendant when the note was executed.

At the time the note fell due, Flood did not pay it. It was protested, and the said C. M. Scofield, (who then lived in New York,) and the defendant were duly notified of its non-payment. On the receipt of such notice, both the defendant and C. M. Scofield went to the said bank in Troy, to look after the matter. They there met Mr. Wellington, the cashier of the bank, and on inquiry of him, were told that said Flood had before informed him, (the said Wellington,)

that the note was for him, the said Flood, to pay, and had directed him to charge the note to said Flood in his account with the said bank, and that he, Wellington, had done so; that it was all right, and that they need not give themselves any further trouble about it. That supposing said Wellington's statement to be true, they left, and paid no further attention to the subject. At the time of said interview with Wellington, the defendant had a large sum of money in his hands belonging to said Flood, nearly to the amount of said note. Relying upon said Wellington's statement, and believing it to be true, he subsequently sent this money to Flood. It subsequently turned out that Flood had never paid said note and it had not been charged to him. Flood died some six months after the note fell due, insolvent. Up to the time of his death he was in good credit, and considered a man of wealth. No claim was made on the said Scofields on account of this note after the notice of protest until a few days prior to said Flood's death.

As all the facts relating to the contract between the said Scofields and Flood were found by the court below, upon the testimony of the said Scofields, it is insisted by the plaintiff that, Flood being dead, under our statute they were not competent witnesses to testify to such facts.

The statute that makes all persons interested witnesses, provides " that in all actions, &c., when one of the original parties to the *contract or cause of action in issue and on trial* is dead, &c., the other party shall not be admitted to testify in his own favor." Was the contract between Flood and the Scofields in issue and on trial before the county court when this case was then heard? It is not the contract declared upon; it is not the cause of action which the party is seeking to enforce by this suit; the plaintiff claims nothing under it. The defendant does not set it up as a substantive ground of claim by way of offset, or otherwise; neither does he set it up as a defence to the plaintiff's right to recover, even; it is not in issue upon the record; it is not a contract between the same parties; and no judgment that can be rendered in this case will conclude the rights of either party under that contract. How then can it be said that such contract was in issue and on trial in this case, within the meaning of the statute?

By the words, " contract or cause of action in issue and on trial," as used in the statute, the legislature evidently intended such contract or cause of action as was to be enforced by the proceeding ; that in regard to which an issue was to be formed, and a trial had, where the rights of the parties to the contract or cause of action would be determined by the result.

In this case the contract between Flood and the Scofields is brought in incidentally as explaining, and giving force and effect, to what took place between Wellington and the Scofields, when they went to the bank on the receipt of notice of the non-payment of the note ; its only effect being to make consistent and natural, the statements made by Wellington on that occasion, which, without the existence of some such contract, would appear to be so inconsistent and unnatural, that the said Scofields could not have been justified, either in believing or acting upon them. For any other purpose, proof of this contract was wholly irrelevant ; for such purpose we think the evidence was admissible, and that the Scofields were competent witnesses to testify to it in this suit, when both parties to the *contract in issue* are in existence.

The question then arises whether the facts found by the court below constitute a legal defence to this action.

Wellington was the cashier of the bank, and as such was the regularly constituted agent of the plaintiff to hold and control this note, and to transact all the ordinary business relating to the collection and payment of it. He was the only proper person to apply to for, and to give information in respect to its payment, all such matters being confessedly within the legitimate scope of his authority as cashier. When this note fell due, Wellington, in the discharge of his duty, notified the said C. M. Scofield, the endorser, and also the defendant, of its non-payment. The notice to the defendant was received by him at Pittsford in due course of mail. The next day, he and his brother C. M., who happened then to be at Pittsford, went to Troy, called at the bank and inquired for Flood, its president. Not finding him, they inquired of Wellington respecting this note. He then knew that as between Flood and the Scofields, Flood was to pay this note. Upon the inquiry being made, it was the duty of Wellington,

*as cashier of the bank*, to tell them the truth as to Flood's having paid the note. They had the right to make the inquiry of *him*, and were entitled to the information asked for. He was the only person of whom they could properly make the inquiry, and the only person on whose statements in respect to the payment of the note, they would be justified in relying. He was the person whom the plaintiff had publicly placed in the position of their cashier, and vested with full authority to transact the very kind of business, in regard to which they sought information. He was the legitimate mouth-piece of the corporation, and in relation to business of this kind, so far as the public were concerned, the only one.

In answer to the inquiries of the Scofields, Wellington tells them, that Flood told him, that the note was for him, Flood, to pay, and had directed him, Wellington, to charge it to said Flood in his account with the bank ; that he had done so, and that they need not give themselves any further uneasiness or trouble about the note, as it was all right. This representation of Wellington was false, and he knew it to be false when he made it. The defendant and his brother believed the statement, and that Flood had paid the note, as they had a right to expect he would do. There was nothing to lead them to doubt it. Wellington's statement was in effect saying to them, Flood has paid and taken up the note according to the arrangement between him and you. Believing the statement, the Scofields gave themselves no further trouble about the note, and in their subsequent dealings with Flood, regarded the note as paid by him. The defendant paid over to Flood a large sum of money that came into his hands belonging to Flood, which he would not have paid to him, if he had not supposed Wellington's statement was true.

This was not an agreement between the cashier and the Scofields, that they were to be discharged from their liability without payment, and the bank to look to Flood for pay. Such an agreement the cashier could not have made that would have been binding upon the bank, and the Scofields would have been bound to know it. Nothing of this kind was attempted. The Scofields only sought information that they were entitled to in regard to a matter that was exclusively within the control and authority of the cashier, and which it

was his right and duty to give. The information he gave was false. The defendant relied and acted upon it to his prejudice, and now insists that the plaintiff is thereby estopped from enforcing the note against him.

On the other hand it is claimed that the plaintiff is not estopped because Wellington, at the time he made the statement above referred to, did not know that the defendant had money in his hands belonging to Flood that he was going to give up to him, relying on the truth of such statement.

The Scofields were not making impertinent inquiries governed by idle curiosity, or seeking information as to matters in which they had no apparent interest, and this Wellington knew.

From the promptness with which they responded to the notice of non-payment; their relations to the paper and the bank; their known connection and arrangement with Flood in respect to its payment, Wellington was bound to understand, and must have understood, that they would rely and act upon the statements he made to them, in their future intercourse with Flood. He must have known that it was for that purpose, that they made the inquiries. They did not go to him to ascertain whether they had paid this note. They knew they had not as well as he did. Their object was, as he knew, to ascertain whether Flood had paid it, and when he told them that Flood had taken up the note, he could have had no other expectation than that they would rely and act upon it. Precisely what they would do, or omit to do, he might not have known, and it is not necessary that he should have known, in order to create an estoppel. It is sufficient if the representations were such as they had a right to rely upon, and did rely and act upon, and were of such a character and made under such circumstances that he was bound to expect they would rely and act upon.

In *Hicks et al.* v, *Cram et al.,* 17 Vt. 449, the rule is laid down by REDFIELD, J., thus: " If one man has made a representation which he expects another may or will act·upon, and the other does in fact act upon it, he is estopped to deny the truth of the representation."

In *Hacket* v. *Callender et al.*, 32 Vt. 97, ALDIS J., says: " When a person is inquired of as to a matter in which his answer may affect

his pecuniary interests, he has a right to know whether the person making the inquiry has an interest which entitles him to make it, and what the object of the inquiry is, and that the answer will be relied upon. When he fairly and fully understands that the inquiry is entitled to a truthful reply, and that the reply may be acted upon, then he is bound to answer according to the truth ; and if he answers falsely or inacurately, it is at his peril."

The case now before us comes clearly within the principle thus laid down.

The principle is not founded upon the idea that what takes place between the parties in a case like the present, operates as a payment, or as a discharge of the liability of the defendant, but upon the ground that the false representations having been acted upon by the defendant to his prejudice, the plaintiff is estopped to enforce the contract ; as to allow him to do so would operate a gross fraud upon the defendant.

It is insisted by the plaintiff that the defendant was not justified in believing that Flood had paid the note, inasmuch as the note was not given up to him, but was retained by the bank. The defendant did not know the note was retained by the bank. If he had known it was in the bank, he would naturally have supposed it was there for the benefit of Flood, (the president,) who, if he had paid the note was entitled to the possession of it, as in his hands it would be evidence between him and the Scofields that he had paid it according to his agreement. For similar reasons the defendant was not entitled to the possession of it, hence he could draw no inference against the truth of Wellington's statement, from the fact that it was not delivered to him. The fact that the bank some six months after the interview with Wellington, gave the defendant notice that it looked to him for payment, came quite too late to avail the plaintiff. The defendant had long before acted upon Wellington's representations. Besides there is nothing to show that after such notice was received (which was just prior to Flood's death,) the defendant could have done anything to relieve himself from the embarrassment under which a reliance on such representations had placed him.

From the view we have taken of the case it is quite obvious that

·the plaintiff cannot recover the small balance that the plaintiff claims is due from the defendant to Flood. The plaintiff being estopped from prosecuting the note against the defendant, the disability extends to the whole note, and is not affected by the state of the accounts between the defendant and Flood.

The judgment of the county court is affirmed.