HUGHES, *Appellant*, v. ISRAEL.

1. **Witness**: COMPETENCY OF PARTY TO CONTRACT IN ISSUE, OTHER PARTY DEAD. Where the plaintiff in ejectment claimed under a deed from defendant to his son, since deceased, and defendant claimed under a verbal contract rescinding the deed, accompanied by possession; *Held*, that the defendant was not a competent witness to prove the contract.

2. **Evidence**: FRAUD. Where it appeared that the defendant in ejectment had conveyed the land in controversy to his son under whom the plaintiff claimed, and the defendant gave evidence tending to show that his son had shortly afterward returned it to him; and that he had ever since held it in open and notorious adverse possession; *Held*, that it was error to exclude evidence offered by the plaintiff to show that at the time of the conveyance to the son the defendant was insolvent, and that he made the deed in order to defraud his creditors, and that his debts had never been paid.

3. **Color of Title.** Where the parties to a deed undertook by verbal contract to rescind the deed, and the grantor thereafter remained in the actual possession of a part of the land, claiming title under the rescission; *Held*, that he was in under color of title, and that his possession extended to the whole tract described in the deed.

4. **Ejectment**: ADVERSE POSSESSION: EVIDENCE. Where the defendant in ejectment relies upon mere possession, his evidence must distinctly show the limits of his possession.

5. **Promissory Note to third Person, when not a Payment.** A note given for the purchase money of land was, by direction of the vendor, made payable to a third person, but was retained by the vendor and never delivered to the payee. *Held*, that it did not operate as payment of the purchase money.

*Appeal from Schuyler Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*Hughes & Raley* and *Higbee & Shelton* for appellant.

*John McGoldrick* for respondent.

RAY, J.—This was an action of ejectment for 360 acres of land, consisting of four distinct but adjoining parts, or legal subdivisions of section 30, 67, 13, in Schuyler county,

Missouri. The petition was in the usual form. Suit was commenced on the 2nd day of February, 1877.

The answer contained, first, a specific denial of the allegations of the petition; and then set up five distinct grounds of defense, in substance as follows: 1st, The statute of limitations—claiming that the defendant had been in the peaceable, open, notorious, adverse possession, of all of said lands, under valid claim of right and color of title for more than ten years before the suit was brought. 2nd, That defendant had lived upon and occupied said lands for about twenty-five years; that about seventeen years ago he sold and conveyed said lands to his son, Elisha Israel, for the sum of $4,000, and took from him his promissory note to secure the payment of the purchase money; but that said Elisha died without ever paying said purchase money, or any part thereof, or making any provision or leaving any property out of which the same could be made; and that said purchase money still remained due and unpaid; and that he had never delivered to said Elisha the possession of said property, but had always retained the possession thereof himself. 3rd, That the plaintiff's only title is derived from an administrator's sale, made by James Raley, administrator of the estate of John P. Israel, deceased, for the payment of debts; that said John P. Israel was a brother of said Elisha Israel, and a son of defendant, and never made any claim to said premises, although he survived his brother Elisha more than fourteen years, and well knew all that time, that the defendant was in the adverse possession of said premises, claiming title thereto against all the world; and that the said John, through whom the plaintiff claims, as aforesaid, never set up any claim to said premises, as heir, devisee or legatee of said Elisha, against this defendant. 4th, That the plaintiff, at the time of his said purchase at said administrator's sale, well knew that the said John P. Israel, in his lifetime, had no title to said lands, as the heir of said Elisha, and that the defendant was in the possession of said real estate,

claiming title to the same, adverse to said administrator, and to any and to all persons claiming to derive title from said Elisha Israel, deceased. 5th, That the defendant, believing that he had good right to the possession of said lands against the heirs of said Elisha, and that none of them claimed any interest therein, and particularly, that his said son, John, never claimed any interest in said premises; he, the said defendant, has been for years making, and has made valuable and lasting improvements thereon; has paid all the taxes assessed thereon, ever since his said sale to Elisha, and with the full knowledge of said heirs, who stood by all these years, well knowing these facts and what the defendant was doing on said lands, and that he was claiming and asserting title to the same, all the time; and that said John and other heirs of Elisha tacitly consented to defendant's large expenditure of money and labor on said premises.

To this answer there was a reply denying all its allegations, and also setting up that the defendant, in 1860, being insolvent, conveyed said lands to his son Elisha for the purpose of defrauding his creditors, and that said Elisha paid him, in full, at the time; and that the indebtedness of said defendant still remains due and unpaid; and that said Elisha paid for said lands by executing his promissory note for the sum of $4,000 to one —— Israel, by the direction of the defendant. Such were the pleadings in the cause.

The record shows that the defendant, in February, 1860, by general warranty deed, sold and conveyed the lands in question to his son, Elisha Israel, for the consideration of $4,000, the receipt of which was acknowledged on the face of the deed. This deed was duly acknowledged and recorded. It also appeared that said Elisha Israel died at his father's house in 1861, intestate and without issue, leaving as his only heirs at law his father, the defendant, his three brothers, one of whom was John P. Israel, and one sister. The evidence conduced to show

that said Elisha Israel, at the date of said deed, executed and delivered to the defendant his promissory note for the purchase money of said lands, to-wit: $4,000, due and payable eight years after date, at six per cent from date. This note, on its face, was payable to Jane Israel, a daughter of the defendant, but the evidence tended to show that it had never been delivered to the daughter, but had always been and remained in the possession of the defendant. It also appeared that the said Elisha Israel died without ever having paid said purchase money, or any part thereof, or making any provision therefor, or leaving any estate out of which the same, or any part thereof could be made; and that the same still remains due and unpaid.

It also appears that the said John P. Israel, the brother of Elisha, went to California in 1859, and remained there until 1875, when he returned to his father's house, in Missouri, and died the same year, intestate. The record further shows that upon the death of said John P. Israel, James Raley was appointed administrator of his estate, and, by order of the probate court of Schuyler county, Missouri, proceeded to advertise and sell the lands in question as the property of the said John P. Israel, deceased, for the payment of his debts, and that at said sale the plaintiff became the purchaser thereof, and received from said administrator a deed therefor, in the usual form and containing the usual recitations proper and common in administrator's deeds, for the payment of debts, dated November 26th, 1876.

The record further shows that in 1860, the date of defendant's deed to said Elisha, for said lands, there was about 100 acres of said land improved and fenced; but the evidence did not show which of the several tracts of land, embraced in said deed and sued for in this action, was covered by or embraced in said improvement and fencing; nor did the testimony otherwise locate said improvements or identify the lands so fenced. The remainder of said lands, at the date of said deed, was uninclosed and so remained until

sometime in 1870, when about 100 acres more were fenced, but nothing appeared to indicate which of said several tracts, or what portions thereof, were embraced in this last inclosure.

It further appeared by said record that the defendant, for some years prior to and at the date of his said deed to Elisha, had been and was living upon and occupying said lands; and that he continued so to do from and after the date of said deed, up to the time of the trial of this cause in 1877. The record further shows that sometime in 187– all the heirs of Elisha Israel, except John P. Israel, executed to the defendant, at his request, a quit-claim deed for said lands; and that, prior to that, the defendant had commenced a suit against all the heirs of Elisha, alleging as ground therefor, that he had deeded the lands to Elisha in 1860 for $4,000—none of which had ever been paid—that he never surrendered the possession of said lands to Elisha, and that Elisha died in 1861 without paying for them, or making any provision therefor, which suit was afterward dismissed by defendant at his cost. The cause was tried before a jury.

At the trial, the defendant, against the objection of the plaintiff, offered himself as a witness in his own behalf, and was permitted by the court to testify generally in the cause. His testimony conduced to show that at the date of his deed to Elisha for said lands, Elisha executed to him his promissory note for the purchase money ($4,000) due and payable as hereinbefore stated; that shortly thereafter, to-wit: sometime in 1861, the defendant and Elisha, by verbal contract attempted to cancel said deed and rescind said sale. This testimony tended to show that both the defendant and said Elisha agreed to said attempted cancellation and rescission, and that both of them thereupon and thereafter considered and treated said deed as canceled; that said attempted cancellation and rescission was brought about at the instance and by the request of the said Elisha Israel, who said he could not and would not pay for the

same. This evidence further tended to show that Elisha repeatedly expressed his wish and readiness to deed the land back to his father; but no deed was in fact ever made, nor was the note for the purchase money ever given up. This evidence also conduced to show that thereupon and thereafter said defendant, with the knowledge and consent of the said Elisha, claimed and occupied the land, as his own, under and by virtue of said attempted cancellation, and that he had so continued to occupy and claim said land as his own, from that day to the time of the trial. This testimony of the defendant also tended to show that none of his children, John P. Israel inclusive, ever set up any claim to the land as heirs of Elisha or otherwise, and that said John P. Israel survived the said Elisha more than fourteen years, and never claimed any interest therein.

The defendant then offered Mary Ann Jarvis, his daughter, as a witness in his behalf, whose testimony, though brief, tended, to some extent, to support that of her father.

On the other hand, the record shows that the plaintiff, in rebuttal, proved by Henry Buford, a justice of the peace, that Elisha Israel, some week or so after the date of defendant's said deed to him for the land, brought said deed to his house and wanted to deed said land to his sister, Mary Ann, who was then unmarried, but that he, the witness, advised him not to do so; that he then proposed to make a deed to his step-mother, the defendant's wife, but he was advised by witness not to make such a deed, as it would show fraud on its face; that said Elisha then went away leaving the deed at his house, where it remained until about six months ago, when he left it with the probate judge for safe keeping. Plaintiff, in rebuttal, proved by McVey, that he, McVey, had a talk with the defendant about this matter about a year ago, and that defendant told him that Elisha was to pay him $4,000 for the land, and that the note then amounted to about $8,000.

The plaintiff then offered to prove by this witness that

the defendant also told him that his motive in deeding the land to Elisha was to defraud his creditors; but the court, on the objection of defendant, refused to allow such proof. The plaintiff, on cross-examination of the defendant, had offered to prove the same thing by the defendant, but the court excluded it. The jury found a verdict for the defendant, and the plaintiff, after an unsuccessful motion for a new trial, brings the case here by appeal.

As will be seen, a number of questions arise on this record. The answer contains five or six grounds of defense, some of them legal, others equitable, and all of them, except the first, containing new matter, which is put in issue by the reply. The instructions given by the court—two of them at the instance of the plaintiff, and four upon its own motion—all bear upon the question of the statute of limitations, which seems to have been made the controlling question of the case in the argument to the jury. They present the law on that question, applicable to the facts in evidence, we think, correctly. The answer contains other counts, and there was evidence tending to prove some of them, (for example, that of vendor in possession, with purchase money unpaid,) but no instructions were asked in reference to them, unless it be the third instruction asked by the plaintiff and refused. The subject of that instruction, as well as that of the eighth, which was also refused, will be noticed in the progress of this opinion.

But the controlling questions for our consideration, upon which this case must turn, grow out of the rulings of the court upon the question of the competency of the defendant as a witness in the cause, and the exclusion and admission of evidence in the progress of the trial. The appellant insists that, inasmuch as his title is derived from the deed made by the defendant to his son, Elisha; and inasmuch as the defendant also claims under, but adverse, to the title so conferred; and as Elisha is shown to be dead, the defendant is, therefore, incompetent as a witness to testify to any fact in the cause. Secondly, That the de-

fendant is incompetent to testify about any contract, conversation, dealing or transaction made, had or done by or between the defendant and said Elisha, relative to said lands now in suit, as said Elisha was a party thereto, and is admitted to be dead. He also contends that it was error not to allow him to prove, by way of rebuttal, that the defendant, at the date of his deed to Elisha, was insolvent, and made the deed to defraud his creditors. It is likewise argued that the facts in evidence, as proved, fail to show or do not constitute color of title, so as to confer on defendant the constructive possession of that part of the premises outside of his actual inclosures ; and that under the facts of this case, the defendant's claim under the statute of limitation, if allowable at all, should be restricted to his actual inclosures or pedal possession. It is further contended that the proof of possession, in this case, was too indefinite and uncertain to ascertain or identify the lands so possessed, and that consequently, no adverse possession of any ascertained lands was made out by such proof. On the other hand, it is argued by the respondent, that " the cause of action in issue and on trial" in this case, was the alleged unlawful withholding, by the defendant, of the possession of the premises from the plaintiff, and that both the parties to this controversy are living and parties to this suit, and that the defendant was, therefore, competent as a witness to testify to any fact in the cause. Besides these, other questions arise on this record that may be noticed hereafter.

It may be remarked, in the first place, that the competency of a party, as a witness in the cause, may often

1. WITNESS: competency of party to contract in issue, other party dead. depend, in a great measure, upon the nature of the pleadings in the cause. Where there are several counts in a petition or answer, it may also very well happen that a party may be competent as to one and incompetent as to the others. If the defendant, in his answer, in this case, had contented himself with a simple denial, either general or specific, the position con-

tended for by the respondent, might, *prima facie* at least, be the true one, but as such is not the fact, we do not feel called on to pass on that question. *Granger v. Bassett*, 98 Mass. 467. In this case, however, the defendant has seen fit to superadd to his specific denial five other grounds of defense, all of which contain new matter, to much of which Elisha and John P. Israel are shown to have been the original parties on the one side, and are now admitted to be dead. These new matters, to which the said Elisha, in the one case, and the said John P. in the other, was a party, have become " the cause of action (or rather of defense) in issue and on trial," in this cause, and have been made so by defendant's answer. Under the rulings of this and other courts, we think that the defendant was not a competent witness to testify to these matters thus put in issue by the pleadings, and that the court erred in permitting him so to testify. *Sitton v. Shipp*, 65 Mo. 305; *Bradley v. West*, 68 Mo. 72; *Angell v. Hester*, 64 Mo. 142; *Ring v. Jamison*, 66 Mo. 429; *Looker v. Davis*, 47 Mo. 142; *Johnson v. Quarles*, 46 Mo. 423; *Manufacturers' Bank v. Scofield*, 39 Vt. 590.

We think the court also erred in not allowing the plaintiff to prove, by way of rebuttal, that the defendant 2. EVIDENCE: fraud. was insolvent, and made the deed in question to defraud his creditors. In this case it became material to know whether the possession of the defendant after the date of the deed to Elisha had been .converted from a friendly to a hostile possession, and any facts tending to explain or throw light on this point were properly admissible for that purpose. If it be true, as charged, that the defendant was insolvent, and that he made said deed to defraud his creditors, it is not likely that he would shortly thereafter, and while his insolvency so continued and his creditors remained unpaid, turn around and openly claim and assert title in himself. At least, such facts were competent to go to the jury for their consideration.

If the facts testified to by the defendant, in reference

to the attempted rescission of the sale, and the verbal can-
3. COLOR OF TITLE. cellation of the deed in question, by the par-
ties thereto, together with the subsequent claim of title
and occupation by the defendant thereunder, with the
knowledge and consent of the grantee in said deed so can-
celed, had been sufficiently proved by other competent tes-
timony, we think, under the law, such a state of facts would
operate as color of title in the party so claiming and occu-
pying. Such proof, so made, we also think, would be com-
petent to show that the possession of the defendant had
been converted from a friendly to a hostile possession, under
the statute of limitations. A mere trespasser, who enters
on land without any pretence of title, cannot by any mere
contrivance extend his possession beyond his actual inclos-
ure. But where the entry is made in good faith, under a
*bona fide* claim of title, that claim need not, necessarily, be
evidenced by deed or other writing. It may be shown or
created by an act *in pais*, without any writing. In the
case of *Rannels v. Rannels*, 52 Mo. 108, this court held that
where a man made a verbal gift of a defined tract of land
to his sister, had it surveyed for her, and put her in the
possession under this survey and the descriptions in his
own deed, she was in possession of the whole tract under
color of title. In the case of *Bell v. Longworth*, 6 Ind. 273,
the supreme court of Indiana, while denying the right of
a mere intruder to extend his possession beyond the limits
of his inclosure, use this language: " But when a party
is in possession, pursuant to a state of facts, which of them-
selves show the character and extent of his entry and
claim, the case is entirely different, and such facts, whatever
they may be in a given case, perform sufficiently the office
of color of title. They evidence the character of the entry
and the extent of the claim, and no color of title does
more." In the case at bar, where the parties to the deed
in question canceled said deed, as they thought, by mere
verbal agreement, and the grantor thereof, thereafter re-
mains in possession, claiming title under said rescission, he

may well be said to be in possession under color of title by relation to the boundaries mentioned in the deed so canceled. He has thus resumed the possession he had prior to the making of the deed so canceled, and to the same extent, actual and constructive.

As to the sufficiency and efficacy of the proof of possession, in this case, if it could be held to have been without color of title, we understand the law to be that the proof must be sufficiently definite and certain to locate and identify in some way the lands so possessed, with such metes and bounds as can be ascertained and recognized. Otherwise the proof would be void for uncertainty. Where there is no color of title, the party so claiming is limited to his actual inclosure.

*4. EJECTMENT: adverse possession: evidence.*

As to the third instruction asked by plaintiff and refused, it is sufficient to say, that while said note for the purchase money of said land was made payable, on its face, to Jane Israel, the daughter of defendant, yet the evidence tended to show that it never had been delivered to her, but had always been and remained in the possession of the defendant. She was a mere volunteer without possession. The consideration moved from him, and he retained the possession. Such a note, thus given and held, did not operate as a payment of the purchase money. The instruction, therefore, was properly refused.

*5. PROMISSORY NOTE TO THIRD PERSON, WHEN NOT A PAYMENT.*

Whether the plaintiff, who holds by an administrator's deed, is to be treated as a *bona fide* purchaser for value, within the meaning of that term, or whether he takes subject to all the equities of the party in possession, whatever they may be, and whether he had any actual notice thereof or not, is a question we do not feel called on to decide, in the present state of the record, and, therefore, express no opinion on that point. *Mann v. Best*, 62 Mo. 491, 496; *Jones v. Carter*, 56 Mo. 403; *Vaughn v. Tracy*, 22 Mo. 417; *Vaughn v. Tracy*, 25 Mo. 320. But, for the reasons heretofore given the judgment is reversed and the cause remanded. All concur.