CHAPMAN *et al., Appellants,* v. DOUGHERTY.

1. **Ejectment, Action of Puts What in Issue :** TITLE : POSSESSION. In a statutory action of ejectment all the constituent elements of title are involved, including possession, right of possession, and right of property, and this puts in issue all the means and documents which evidence and establish the right of plaintiffs to recover.

2. ——— : EVIDENCE : WITNESS. In an action of ejectment by the devisee of land whose testator held under a deed from defendant, the latter is incompetent to testify as to the non-delivery of such deed. R. S., sec. 4010.

3. **Practice ;** EVIDENCE : WITNESS. The disability, as a witness, of one of the original parties to a contract, or cause of action, in issue and on trial, where the other party is dead, and the survivor is a party to the suit, is co-extensive with every occasion where such instrument or cause of action may be called in question. R. S., sec. 4010. Overruling *Bradley v. West,* 68 Mo. 69.

*Appeal from Chariton Circuit Court.*—HON. G. D. BURGESS, Judge.

REVERSED.

*A. H. Waller* and *Kinley & Wallace* for appellants.

(1) In a suit in ejectment on petition and general denial, every deed in the chain of title not agreed to is a matter of controversy and litigation, and in this case plaintiffs' title being claimed to be from defendant to plaintiffs' testator, Lucy A. Horsley, the only question in issue was whether the deed of Dougherty to Lucy A. Horsley was a valid contract of conveyance, and the evidence and instructions in the case, on both sides, were alone directed to that point. (2) The statute prohibited defendant, Dougherty, from testifying concerning the deed to Lucy A. Horsley, she being dead, and plaintiff being her legal representative. R. S., sec. 4010. The statute is an exact copy of the Vermont statute, and the interpretation thereof by the Supreme Court of that state is understood to be adopted by the legislature in copying it, and the court will follow the Supreme Court of Vermont in construing the section here. *Skouten v. Wood,* 57 Mo. 380 ; *Hollister's Adm'r v. Young,* 41 Vt. 156. (3) The evidence of defendant, Dougherty, in regard to the deed by him to Mrs. Lucy A. Horsley, deceased, concerning his intentions in making and delivering the same to James R. Horsley for her, the consideration therefor, and the conditions he imposed on Mrs. Horsley thereby, should have been excluded, the evidence showing both James R. Horsley and Mrs. Lucy A. Horsley to be dead. *Looker v. Davis,* 47 Mo. 140 ; *Poe v. Domic et al.,* 54 Mo. 119 ; *Martin v. Jones et al.,* 59 Mo. 181 ; *Annette v. Montague,* 63 Mo. 201 ; *Angell v. Hester,* 64 Mo. 142 ; *Sitton v. Shipp,* 65 Mo. 297 ; *Ring v. Jamison,* 66 Mo. 424 ; *Hughes v. Israel et al.,* 73 Mo. 538 ; *Butt's Adm'r v. Phelps,* 79 Mo. 302 ; *Wilcox v. Jackson,* 51 Ia. 208 ; *Hollister's Adm'r v. Young,* 41 Vt. 156 ; *Ins. Co. v. Wells,* 53 Vt. 14.

*A. W. Mullins* for respondent.

The "cause of action in issue and on trial" was the alleged unlawful withholding, by the defendant, of the possession of the undivided one-half of block forty-seven in the town of Keytesville, Missouri. Both parties to this controversy were and are living. The two plaintiffs, husband and wife, did testify on the trial in their own favor, and the defendant did the same for himself. The case does not come within the proviso to the first section of the witness act. 1 R. S. 1879, sec. 4010, pp. 687-8. And hence it follows that the defendant was a competent witness in his own behalf, and no error was committed by the court in admitting his evidence. *Bradley v. West*, 68 Mo. 69, 72, 73; *Granger v. Bassett*, 98 Mass. 462, 468; *Manufacturer's Bank v. Schofield*, 39 Vt. 590, 594.

SHERWOOD, J.—This is an action in ejectment for the undivided one-half of block forty-seven in the town of Keytesville, Chariton county; a piece of ground devised to Emma Chapman, wife of her co-plaintiff, by her mother, Lucy Ann Horsley, the grantee in a deed executed by Dougherty, the defendant. On the trial defendant admitted the existence of this deed, which was for the property in suit; that it was last in his possession, and was lost. Other testimony offered on behalf of plaintiffs showed a *prima facie* title in Mrs. Horsley to the premises in controversy. The controlling question in this cause, then, is whether Dougherty was a competent witness in regard to the deed just mentioned; *i. e.*, as to the delivery or non-delivery thereof.

The provisions of the statute in relation to cases like the present are contained in these words: "Provided, that in actions where one of the original parties to the contract, or cause of action, in issue and on trial,

is dead, or is shown to the court to be insane, the other party shall not be admitted to testify in his own favor." R. S., sec. 4010. What is meant by the expression "contract or cause of action?" Judge Bliss says: "The cause of action, then, is the wrong. * * * The latter phrase * * * includes the former, for there can be no cause of action aside from the facts which constitute it; the facts show a wrong committed or threatened, and unless they do so there is no cause of action. * * * The wrong may be done by a denial of a right, or by the refusal to respond to an obligation; * * * An instance of the first is an adverse claim to the property, or the denial of an obligation." Code Plead., sec. 113.

In our statutory ejectment all the constituent elements of title are involved: possession, right of possession, and right of property. Now, "title may be defined generally, to be the evidence of right which a person has to the possession of property." 2 Abbott's Law Dict. 566. "Title is when a man hath lawful cause of entry into lands whereof another is seized; and it signifies also the means whereby a man comes to lands or tenements, as by feoffment, last will and testament," etc. Jacob., p. 245. And it is elsewhere defined as "the means whereby an owner possesses his property justly, or the evidence of ownership." Whart. Law Lex. 824. And in an action which brings the title in question, something more is involved than the actual occupation, or mere *pedis possessio*. It is one which also involves the *justa causa possidendi*. *Gregory v. Kanouse*, 2 N. J. L. 62. These definitions and remarks effectually dispose of the contention of defendant's counsel that the "*cause of action in issue and on trial was the alleged unlawful withholding by the defendant of the possession*," etc. The "cause of action in issue and on trial" was of a much broader scope, since it was the *title* to the premises in controversy which was in

issue and on trial, and, under the authorities cited, the word *title* includes and signifies all the means and documents which evidence and establish the right of plaintiffs to recover in the action which they brought.

All these things were put in issue and necessarily involved therein; and the defendant was one of the original parties to the contract or deed which evidenced the title whereon plaintiffs relied, without which their title could not be established or maintained, and the other party to that contract was dead; that contract or deed was thus necessarily in issue, constituting as it did the highest evidence of ownership, and consequently the most material fact which went to make up plaintiffs' cause of action; that cause of action was in issue and on trial, and without proof of the validity of that deed in consequence of a delivery thereof, plaintiffs had no standing in court. The importance of the defendant's testimony, denying, as it did, the validity of the deed by reason of the fact, to which he testified, that it had never been delivered, is, therefore, most obvious; since that testimony struck at the very foundation of plaintiffs' cause of action. Was his testimony admissible? " The reason of the statutory prohibition is the prevention of one person testifying where death has sealed the lips of his adversary." *Fulkerson v. Thornton*, 68 Mo. 468. Wharton, when speaking of similar statutory prohibitions, says: "The reason of this exception is, that when there is no mutuality there should not be admissibility; *i. e.*, when the lips of one party to a contract are closed by death, then the other party should not be heard as a witness. * * * Much, however, as the statutes may differ in words, they are the same in purpose. That purpose is to provide that when one of the parties to a litigated obligation is silenced by death, the others shall be silenced by law." 1 Whart on Evid., sec. 466.

And this view has been reiterated by this court in

various forms.   Thus, Wagner, Judge, says: "The ob-
ject and purpose of the statute was undoubtedly to put
the two parties to a suit upon terms of substantial
equality in regard to the opportunity of giving testi-
mony.   The proposition may be taken as a general one,
therefore, that where parties have contracted with each
other, each may be supposed to have an equal knowl-
edge of the transaction, and both, if living and sane, are
allowed to testify.   But if one is precluded by death or
insanity, the other is not entitled to the undue advan-
tage of being a witness in his own case." *Looker v.
Davis*, 47 Mo. 140.   And in *Stanton v. Ryan*, 41 Mo.
510, where surviving partners brought an action upon a
*quantum meruit*, and the defendant set up as a defence
a special contract with the deceased partner, the remain-
ing partners were permitted to testify touching the
facts constituting their cause of action, and so also
was the defendant; but he was not permitted to testify
respecting the special contract, which, if enforced, would,
it seems, have defeated the action of the plaintiffs; and
this ruling was affirmed by this court, Wagner, Judge,
remarking: "The suit was not instituted on the con-
tract, it was denied that any contract existed; the
surviving plaintiffs knew nothing about it; and to per-
mit Ryan, by his own testimony, to come in and set up,
and prove its terms, when Stanton's lips were sealed by
death, and could not be there to contradict, qualify or
explain his statements, is at war with justice, and cer-
tainly not authorized by law."

In Vermont, a state possessing statutory provisions
identical with our own, the grantee of the heirs of an
intestate   through   the   administrator   of   the   estate,
brought ejectment against the defendant, who had held
the land sued for prior to the death of the intestate. The
plaintiff claimed this possession was not adverse; the
defendant claimed the contrary, and he was admitted
by the lower court to testify in support of his claim;

but this ruling was reversed by the Supreme Court, Pierpoint, C. J., after quoting the statute, among other things, said : " The court below seem to have proceeded upon the ground that the beneficial operation of this statute is to be limited to cases where the estate or the legal representatives of the deceased party are in interest. The statute does not in terms so limit it. * * * The suit is brought in the name of the administrator to establish the title of the deceased party, for *the benefit of the grantee of the heirs to the estate.* Is there any reason why the benefit of this statute should be given to the heirs of the estate and denied to their grantee, the action being in the same form ? The object of the statute was to guard against the danger of false testimony by the survivor. The danger is just as great in one case as in the other. The grantee or assignee of the deceased party, or his representatives, is not supposed to know any more of the nature of the transaction between the original parties than do the heirs or administrator of the deceased party. Ordinarily he knows less. The rights of the assignee are just as sacred in the eye of the law, as the rights of the heirs. The protection of the statute is just as necessary in the one case as in the other, and no evil can result from its application in the one case that will not follow its application in the other. * * * The statute makes the death of one party to the cause of action in issue the ground of excluding the survivor, and not the fact that the estate of the deceased party has an interest in the result of the suit." *Hollister v. Young,* 41 Vt. 157. The doctrine of this case was afterwards affirmed in the case of *Insurance Co. v. Wells,* 53 Vt. 14, in which all the prior cases in that state on the point were commented on, inclusive of that of *Bank v. Schofield,* 39 Vt. 590, in which the opinion of the court was also delivered by Pierpont, C. J.

It will readily be observed that *Hollister's case, supra,* fully sustains the position heretofore taken as to

what constitutes, in ejectment suits, the cause of action in issue and on trial; and the inadmissibility of a party thereto, his adversary being dead, to testify in the action. This court, on several occasions, has made similar rulings where the title to land, in one form or another, was in issue. Thus, in *Martin v. Jones*, 59 Mo. 181, where one McCarty had sold and conveyed land to one Williams, and afterwards conveyed the same by deed of trust to Jones as trustee for Austin, and both Jones and Austin had notice of the former deed, and the heirs and representatives of Williams filed their petition to cancel the deed of trust, and to enjoin a sale thereunder, and the answer denied the execution of the deed to Williams, and the fact of notice, it was held by this court that McCarty was incompetent as a witness to controvert by his testimony his deed to Williams; Vories J., remarking: "Whether either of the matters in issue, as above set forth, could be called the contract or cause of action in issue and on trial, within the meaning of the statute, is difficult to determine; but if the object in introducing the defendant, McCarty, as a witness was to elicit evidence from him, the tendency of which would be to affect or invalidate the deed from him to Williams, he would most certainly be incompetent for that purpose, as the other party to that contract was dead." So, also, in *Poe v. Domic*, 54 Mo. 119, where a suit was brought to set aside, and adjudge null, a deed made by Poe to his co-defendant, it was ruled that Poe was incompetent as a witness, in respect to the execution of such deed. And in *Sitton v. Shipp*, 65 Mo. 297, it was ruled in a proceeding for specific performance, that a plaintiff witness, where the other party to the contract was dead, was incompetent to prove either the contract itself, or acts of part performance thereunder.

In quite a recent case, that of *Hughes v. Israel*, 73 Mo. 538, it was ruled in an action of ejectment where the plaintiff claimed under a deed from defendant to his

son, since deceased, and defendant claimed under a verbal contract, that defendant was not a competent witness to prove such contract. In that case, as in this, it was contended that the cause of action in issue and on trial was the unlawful withholding by the defendant of the possession of the premises from the plaintiff; and that as both the parties to the controversy were living, and parties to the suit, defendant was, therefore, competent as a witness to any fact in the suit. The scope of the issues on trial was not, however, passed upon, but the intimation was strongly given that if the answer had been simply a general denial, that then the position as to the competency of the defendant as a witness, would have been tenable. To this intimation I cannot yield my assent; for I must confess my inability to discover how parties to a legal controversy can so mould their pleadings as to confer competency on a witness where the law not only fails to bestow it, but more than that, positively declares his absolute incompetency.

If I am correct in my views, heretofore expressed, as to the scope of the issues in an ejectment suit; as to its embracing within its issues the *title, and all that such term implies,* then it follows that defendant was incompetent as a witness to overthrow by his testimony any instrument to which he was one of the original parties, such instrument being the muniment of title on which the plaintiffs rely. Any other doctrine than the one here asserted, would place it in the power of every grantor in an action of ejectment where the grantee is dead, to overthrow by his oath his most solemnly executed conveyance on the specious plea that such instrument was not embraced within the issues of such a suit. The defendant in this case confidently relies on *Bradley. v. West*, 68 Mo. 69, as sustaining his position as to the narrow scope embraced in the issues of an action of ejectment; and that measured by the standard of that case, defendant was a competent witness. In that case

the *grantee in the deed was permitted to testify to facts which gave validity to the very deed under which he claimed, the grantor therein being dead.* It is true, in that case, the defendant was a *stranger* to the deed, but I am not able to see any distinction between a case of that character, and one where the heirs of either the grantor or grantee are parties to the litigation. The statute certainly makes no such distinction; the disability of one of the original parties to the contract or cause of action in issue and on trial, where the other party is dead, and the survivor is a party to the suit, is co-extensive with every occasion where such instrument or cause of action may be called in question; at least the statute lays down but the one rule, and that should be the guide. All the dangers and all the mischief which can arise from the false testimony of the surviving party, will be incurred as well in the case where the heirs of the deceased party bring suit, and rely on the contract, etc., as when a stranger does the like. *Hollister's case, supra.*

Indeed, the rule in *Bradley v. West*, tends to render *the titles of heirs unmarketable in their hands;* for under that rule, so soon as they convey to a stranger, he must needs run the gauntlet of anticipatory perjury, and take the risk of seeing any link in his chain of title swept away by the bare oath of some dissatisfied party whom he may find it necessary to sue, or whose good pleasure it is, mayhap, to sue him.

For these reasons, I am of opinion that the rule laid down in that case is not law; should no longer be followed, and that the judgment of the lower court should be reversed, and the cause remanded, with directions to proceed conformably to this opinion. All concur.