BAKER, Appellant, v. REED et al.

Division Two, May 7, 1901.

1. **Witness:** ONE PARTY DEAD: INCOMPETENCY. In a suit in ejectment, where the issue is the priority of deeds of trust, a defendant beneficiary is incompetent to testify to any arrangements between himself and the deceased mortgagor concerning the extension of the loan, or any agreement respecting it.

2. **Priority of Deeds of Trust:** PURCHASE OR PAYMENT OF NOTE. Where the beneficiary in a deed of trust holds back so much of the money as will pay off a prior deed of trust, and then pays off that note and takes an assignment of it to himself, it will not be held to be an assignment of the note, and in consequence an equitable assignment of the deed of trust, but a payment of the note in fact, and an extinguishment of the deed of trust. The payment of the prior note by the beneficiary in the second deed of trust with the money retained by him for that purpose, is a duty that he owed the maker of the second note, and to the mortgagor in the first deed of trust, and to the purchaser of the equity of such mortgagor.

3. ————: EXTENSION BY NEW DEED OF TRUST. Where the owner of a note, not yet due, agrees to take a new note for the same amount for a much longer period and a new deed of trust securing the same, provided a second deed of trust on the property is released, and being assured that it has been released, accepts a new note and a new deed of trust, and on the same day it is recorded releases his former deed of trust under the full impression that he is getting a first lien, and it afterwards develops that the second deed of trust had never been released, but being foreclosed, the property was sold to a purchaser who knew none of the facts except such as the record recited, such purchaser takes the title.

Appeal from Greene Circuit Court.—*Hon. Jas. T. Neville,* Judge.

REVERSED AND REMANDED.

*Baker & Butts* for appellant.

(1) Inasmuch as Damrill was dead at the time of the trial of this case, Mills was not a competent witness as to his transactions with Damrill affecting the title to this property. Chapman v. Dougherty, 87 Mo. 617. (2) The court found "that Mills retained out of the $500 loaned to Damrill enough to pay off the Maggie note." It was Damrill's money and it paid the Maggie note. "That Damrill assumed and agreed to pay the Maggie note; that at the time Mills loaned him the

Baker v. Reed.

money Mills knew that the Maggie note had not been paid, and that Damrill had assumed and agreed to pay the same, and that Mills paid the note." Under the above state of facts said note was extinguished and by taking an assignment of the same Mills could not keep it alive for any purpose. Atkinson v. Stewart, 46 Mo. 515; Jones on Mortgages, sec. 740; Sheldon on Subrogation, secs. 46 and 50; 24 Am. and Eng. Ency. of Law (1 Ed.), p. 255, and note. (3) The court found that Martin had the Maggie note for collection. He could not sell. He had no authority to sell.

*W. D. Tatlow* for respondents.

(1) The Maggie deed of trust was and is unsatisfied of record, and in full force. So far as this appellant is concerned, the note secured thereby is long past due, and the respondent is the owner and holder thereof, and is in possession of the premises under the deed of trust after condition broken. This gives him the right to possession as against appellant or any one else until the deed of trust is paid and constitutes an adverse, outstanding, legal title that prevents a recovery by appellant in this case. Priest v. St. Louis, 103 Mo. 657; Howard v. Thornton, 50 Mo. 291; Jackson v. Magruder, 51 Mo. 55; Springfield Engine Co. v. Donovan, 120 Mo. 423; Snyder v. Railroad, 131 Mo. 580. (2) The appellant claims that the Maggie deed of trust was paid by Mills. Her contention is based on a mere theory without any evidence to support it, which theory in turn is based solely on the fact that it would be to her interest for Mills to have paid the note. From this she concludes it was paid; yet it is conceded that he owed her no duty to pay the note, and that he refused to permit the holder to mark the note paid, but directed and required him to assign the note to him, by writing his name across the back

thereof. This theory of the appellant, is that at the time Mills loaned Damrill the $500 and took the deed of trust on the lot in question, Mills retained out of the $500 sufficient to pay the Maggie note and agreed to pay it. The only witnesses in the case that knew anything about this matter were Mills and Mrs. Damrill (Damrill being dead). Mills testified that he paid Damrill the $500 in full, and that Damrill agreed to pay the Maggie note, and that he (Mills) afterward paid the Maggie note and took an assignment thereof. Mrs. Damrill testified that Mills paid her husband the $500 in full, besides the amount he paid Martin for the Maggie note. But, adopting the appellant's theory for the sake of argument, that Mills retained sufficient out of the $500 loan to pay the Maggie deed of trust, and agreed to pay it, appellant is in no better position in this case, because it is conceded that he was to have a first lien when the Maggie deed of trust was paid. Some five or six months after the Mills five hundred dollar deed of trust was executed, Mills, to accommodate Damrill and Hughes, who was on a trade with Damrill for the lot, agreed to extend his loan to a three-year loan instead of one, and for this purposes took another note and deed of trust, upon the express understanding that the Exchange Bank deed of trust had been released as to this lot, when in fact it had not. As between Mills and Damrill, Mills was entitled to a first lien on the lot for $500, and the appellant did not purchase on the assumption that it was paid, and that it was the first lien on the lot, hence, appellant is in no better position than Damrill. The law is well settled that even payment of the secured debt by one having an interest in the property will not, in all cases, extinguish the debt or operate as a merger. Indeed, it will never be held to have that effect, unless such be the intention of the one making the payment. The purchase or payment is held to constitute an extinguishment or assignment, accord-

ing to the interest or intention of the parties. These principles are fully settled by the authorities in this State and elsewhere. Ess v. Griffith, 128 Mo. 61; Lanier v. McIntosh, 117 Mo. 517; Keet v. Baker, 141 Mo. 179; Bank v. Freund, 80 Mo. App. 657; Kelly v. Staed, 136 Mo. 430. (3) Even if as between Mills and Damrill, the note was paid, under the circumstances in this case it would be only as to him, not as to the appellant, to whom Mills owed no duty, and when it was against Mills's interest to pay, and when he did not intend to pay. Keet v. Baker, supra; Kelly v. Staed, 136 Mo. 437; Allen v. Dermott, 80 Mo. 59.

BURGESS, J.—This is ejectment for the possession of a city lot in the city of Springfield. Both parties claim title under one G. D. Maggie.

The petition is in the usual form.

The answer alleges that plaintiff claims title under one Stephen Damrill, now deceased, who in his lifetime purchased said premises of one G. D. Maggie and wife, Josephine, who before said sale to Damrill, mortgaged said premises to one Frances McCormack (one P. H. Martin being the trustee in said mortgage or deed of trust, to whom said lands were conveyed in trust to secure the sum of money mentioned in said deed of trust or mortgage, with interest, to-wit, one hundred and fifty dollars). That long before plaintiff commenced this suit, defendant Mills, for value, purchased said mortgage and the note mentioned therein, from the legal holder and owner thereof, and the said mortgage having become due and unpaid and forfeited, the defendant Mills entered into possession thereof because of such forfeiture, and rented the same to defendant Reed, who is alone in actual possession thereof, as tenant of defendant Mills. That defendant Mills is still the owner and holder of said mortgage and note aforesaid, which

remains due and wholly unpaid; wherefore defendant prays judgment.

"Defendants for further answer say that after said Damrill purchased said premises of said Maggie, the said Damrill and wife mortgaged the same to T. J. Delaney, trustee therein, wherein he (Damrill) conveyed to said trustee said premises, to secure payment of the sum of five hundred dollars, loaned said Damrill by defendant Mills, due in one year from date, and dated the twenty-third day of April, 1892. That soon afterward said Damrill made a second deed of trust, to secure the Exchange Bank in the sum of five hundred dollars, on these premises and a large amount of other property, upon which said last-mentioned mortgage was a first lien. This is dated July 21, 1892, and is the mortgage under the foreclosure of which plaintiff claims title to the premises sued for.

"That after the execution of said mortgage by Damrill to defendant, trustee for defendant Mills aforesaid, and after the making of the second mortgage to the Exchange Bank under which plaintiff claims, as aforesaid, to-wit, on the twenty-first of September, 1892, said Damrill, wishing to sell the said premises sued for, and having found a purchaser, to-wit, one Hughes, contracted the same to him, but the said Hughes being unwilling to assume the payment of the said mortgage, to defendant Mills, which had then less than one year to run, the trade was about to fail of consummation, but Hughes being willing to make the purchase if defendant Mills would extend the time of payment to three years instead of one year, as provided in the mortgage, whereupon defendant Mills did agree to such extension and Damrill executed to defendant Mills another mortgage for the same amount for the original money loaned as first aforesaid, and no other, and neither defendant Mills nor said Damrill had any intention to, or did they, or either of them, intend thereby to abandon defendant

Mills's prior lien, nor make the said last-mentioned mortgage second to said mortgage to the bank as aforesaid, under which plaintiff claims. That no other or further or different 'consideration was paid on the last-mentioned mortgage than that already paid six months before, when said first-named mortgage was made as aforesaid. That said mortgage under which plaintiff claims was and is on its face made subject to the said mortgage to plaintiff first aforesaid executed prior thereto as aforesaid. That no part of said mortgage had ever been paid, nor has there ever been anything paid on the said other mortgage, extending it as aforesaid, but the whole of said debt remains due and unpaid, and defendant Mills still holds and owns the same and likewise holds possession through his co-defendant, who is in actual possession as defendant Mills's tenant, as aforesaid.

"And defendants say that plaintiff, and her grantors, and those under whom they claim, are not innocent purchasers, in the regular course of trade; that they had knowledge and notice of defendant's equities herein, bought said premises at a grossly inadequate price, and accepted and gave only quitclaim deeds, and for no ordinary cash consideration. That when defendant Mills agreed to and did extend the payment of said mortgage from one to three years as aforesaid, through inadvertence and mistake the said original mortgage was marked on the record satisfied, yet it was not in fact satisfied, nor was it intended by any party that it should be, but the whole transaction was only intended to be an extension of payment as aforesaid, and was not intended to postpone defendant Mills to the said bank mortgage, all of which plaintiff well knew and had notice of at and before her purchase of said premises. That plaintiff's said purchase of said premises of her grantor, was made after she had full notice of defendant Mills's equities herein, and her contract of purchase is still executory, in that she has not

fully paid for the same, that her grantee had notice of all the matters and things herein charged and himself gave a grossly inadequate price for said property, accepting a quitclaim deed and giving to plaintiff a like deed for a like grossly inadequate consideration in trade and traffic, which has not yet been paid.

"Wherefore defendants pray that if upon a hearing hereof it should be equitable and necessary to the securing of defendants' rights herein, that the said mortgage under which plaintiff claims be postponed to that of defendant Mills, or that defendant Mills should be required to make plaintiff whole in their said dealing, concerning said premises, defendants pray for such order and decree and they pray for all other equitable relief.

"The defendants for further answer deny each and every allegation of plaintiff's petition not herein specifically admitted to be true."

Plaintiff, by replication, denied all the allegations in defendants' answer, except that the defendant Reed was in the possession of the property as the tenant of F. T. Mills, that Damrill executed a deed of trust to secure a note of $530 to the Exchange Bank, and that said Mills satisfied the deed of trust from Damrill to Delaney.

The replication then alleges that plaintiff purchased the property for a full, fair and adequate consideration, without any knowledge of any prior claims by said Mills or any other person, and that he (said Mills) did not purchase said note of Frances McCormack, as alleged in his answer, but that said note was paid by Damrill with his money, the aforesaid Mills simply acting as agent for Damrill.

The facts briefly stated are that on the twenty-first day of December, 1891, Maggie executed a deed of trust on the lot in question to P. H. Martin, as trustee for Frances McCormack, to secure a note of $150 due in three years from the date of the

deed of trust.    Maggie, afterwards, on the fourth of February, 1892, conveyed the property to Stephen Damrill.    Damrill on the twenty-first of April, 1892, executed a deed of trust on this lot to Delaney, as trustee for Mills, to secure a note of $500 due in one year.    Afterwards, in July, 1892, Damrill executed a second deed of trust on this lot and other property to W. B. Roberson, as trustee for the Exchange Bank.    This deed of trust recited that it was "subject to a loan of $500 on said lot 36, block 3."

At the time that the Damrill deed of trust was executed, Mills did not have sufficient money on hand to pay Damrill in full; he paid him part at that time and the balance at different times.    The last payment was made about September 21, 1892. At this time, Damrill was about to sell this lot to a man named Hughes.    Hughes, however, would not buy unless he could get Mills to extend the loan to three years instead of one year. Damrill and Hughes came to Delaney's office and there met Mills for the purpose of getting this extension.    Delaney was Mills's attorney at the time.    There was a gentleman in De- laney's office at that time by the name of Barry who was a notary public and attended to some business for Delaney. Mills agreed to extend the note for three years, and for this purpose had Damrill to execute a new note for the same debt due in three years instead of one year, and execute another deed of trust to secure the last note.

Barry went to examine the record and see if the Exchange Bank deed of trust was released.    Hughes agreed to have this done.    There were several releases on the Exchange Bank deed of trust.    Barry reported to Mills that the Exchange Bank deed of trust was released.    Mills then satisfied the first deed of trust and cancelled the first note, and took the second, dated September 21, 1892 (the date of the cancellation of the first

mortgage), and recorded this deed of trust, thinking it was a first lien.

Damrill did not pay off the deed of trust, and Mills afterward paid Martin the amount due on the note and had it assigned to himself.

A. F. Butts, the attorney for Mrs. Baker in this case, was the attorney for the Middleton Grocer Company, and through his advice that company purchased the Exchange Bank note secured by the deed of trust, after the release by Mills of his first deed of trust. The grocer company released part of the property and then foreclosed as to the balance, including this lot 36. At this foreclosure, one N. E. Reber purchased, and after receiving the trustee's deed, he transferred lot 36 to Butts. Just what consideration, if anything, Butts paid for the lot, does not appear.

Butts testified that he examined the record of Mills's deed of trust and relied upon the release as it appears on the record. He did not look any further than to see that the Mills deed was released, though on the same day that Mills released his deed of trust he filed in the office of recorder of deeds for Greene county a deed of trust executed by the same parties and to secure the same amount, to-wit, $500, and on the same property.

The release shows on its face that it was shortly after the execution of the note, and some seven months before the note was due.

After Butts got the deed from Reber, he transferred the lot to Mrs. Baker for an alleged consideration of $700, two hundred and forty of which was for rent that he owed her, and a $150 note signed by the plaintiff, and her husband, James Baker, which Butts testified that he sold to Judge Vaughan.

It is conceded and not denied, that Mills loaned Damrill the $500 upon the express agreement that he was to have a first lien on the lot in controversy. He satisfied his deed of trust

upon the understanding that the Exchange Bank deed of trust, which was subject to Mills's deed of trust and so recited, had been satisfied.

He afterwards paid the one hundred and fifty dollar deed of trust executed on this lot by Maggie, which antedated any of the other deeds of trust. This deed of trust was of record and unsatisfied at the time the Exchange Bank took its deed of trust — at the time Reber purchased under the foreclosure thereof—and when Butts purchased from Reber— and at the time Mrs. Baker purchased from Butts.

Mrs. Damrill, widow of Stephen Damrill, testified that Mills paid her husband all of the $500, which did not include the $158.50 that was paid for the Maggie note.

The case was tried by the court sitting as a jury, who, after hearing the evidence, made, as part of the judgment, a finding of facts which is as follows: "That the common source of title to the land in controversy, lot 36 in block 3, Hobart's second addition to the city of North Springfield, now Springfield, was in G. D. Maggie. That Maggie conveyed the lot to P. H. Martin, trustee for Frances McCormack to secure a note for $150, on the twenty-first day of September, 1891. That Maggie conveyed said lot to Stephen Damrill, February 4, 1892, by warranty deed, subject to said deed of trust to P. H. Martin for the $150, which said Damrill assumed and agreed to pay by a clause inserted to that effect in said deed. That on the — day of —, 1892, Damrill borrowed $500 of defendant Mills, giving a note for said $500 secured by a deed of trust on the aforesaid lot. That at the time Mills loaned this money he knew that the note for $150 had not been paid and that Damrill had assumed and agreed to pay same. That this $500 was paid to Damrill in small payments as he needed it till September 7, 1892, when the last amount was paid. That Mills retained, out of the $500 loaned, enough money to pay the note of $150

when the same became due. That on July 21, 1892, Damrill conveyed the said lot to Walter B. Roberson, trustee, to secure a note of $530 to the Exchange Bank. That on the twenty-sixth day of September, 1892, Mills, to accommodate Damrill, satisfied the deed of trust to secure the $500 loaned to him reciting in said release that 'the debt mentioned in the within deed of trust having been fully paid and discharged, I hereby acknowledge satisfaction in full and release the property herein conveyed from the lien and incumbrance thereon.' That Damrill made a new note and secured the same by a new deed of trust on said lot to secure this same debt. That thereafter default was made in the payments of the $530 note to the Exchange Bank and the property was sold and through mesne conveyances the same was conveyed to the plaintiff herein on December 8, 1885. The plaintiff herein had no notice of the transaction between Mills and Damrill further than that given by the record. That the plaintiff bought in good faith for a valuable consideration. That Mills, when the $150 note became due in 1893, paid the same and took an assignment thereof, with the intention of holding all the rights he could therein. That P. H. Martin who had said note for collection regarded the note as paid. That Damrill afterwards conveyed this lot to other parties, who turned possession of same over to Mills. That defendants were in possession of the lot in controversy when plaintiffs instituted this suit on the twenty-third day of April, 1897, and have been ever since. That the rents and profits are worth $5 per month. That defendant Mills has been in possession by his tenants, but that he has never actually received any rents. Under these facts I don't think plaintiff is entitled to recover in this action."

Judgment was then rendered for defendants, from which plaintiff appeals.

No objection is made by plaintiff to the finding of facts,

but she insists that even under the facts as found she was entitled to judgment for the possession of the property.

At the time of the trial Stephen Damrill was dead; and over the objection of plaintiff upon that ground defendant, F. T. Mills was permitted to testify as follows: "I am the Mills referred to in the deed of trust dated April 21, 1892, executed by Damrill. I am the beneficiary in that deed of trust. I think Mr. Delaney drew up that deed of trust. He was my attorney at the time. I did not pay all the $500 to Damrill at that time, but I paid him the $500. He came to me and told me about a matter that he was going to trade for, and he wanted some money. It would take $500 to pay him off. I told him I did not have that much, is my best recollection. I gave him the $500 in different payments. Damrill was to pay the $150 deed of trust that was then on the property that had been executed by Maggie. Some few months afterward he wanted to sell the property and said that he could not sell it unless my deed of trust was extended so as to be a three years' loan. This was in Mr. Delaney's office, and I paid him some of the $500 at that time. Mr. Barry was then in Delaney's office as Mr. Delaney's clerk, or any way, he was connected with Mr. Delaney and transacted business for him. Mr. Barry went out to have the Exchange Bank deed of trust released as to lot 36. The time that Mr. Barry went out to see about the release of the Exchange Bank deed of trust, must have been about the time the change was made in my deed of trust. Mr. Damrill was several times in the office, and I do not remember each date. I paid Mr. Damrill with checks on the First National Bank. After that bank went out of business, I changed to the Holland Bank. I finished paying the $500 about the time that Barry went to see about the release of the Exchange Bank deed of trust. About the time the $150 deed of trust executed by

Vol 162 mo—23

Maggie on this lot became due, Damrill was behind with interest on my note. I went to the record and found that the Maggie deed of trust was not paid; then I went to Mr. Martin's office to take that up so as to be safe. Martin came over to Mr. Delaney's office and transferred it there. The check I gave P. H. Martin was on C. B. Holland's bank for $158.50; that is the check with which I purchased the $150 note from Martin. Mr. Damrill never paid me the first $500 note secured by deed of trust to Delaney, as trustee. It was satisfied on the margin of the record to extend the time for three years. He was selling the property to a party named Hughes, and he would not take it unless my deed of trust was made for three years instead of one. Mr. Barry went out then to satisfy the Exchange Bank mortgage. I supposed it was satisfied, or I would not have satisfied my deed of trust, and had another one executed for the same debt, and to secure a note for the same amount due in three years. I am certain that I paid Mr. Damrill at different time $500 outside of the money that I paid Martin. I paid Martin $158.50 besides the $500 I paid Damrill. Mr. Barry was looking after the matter for me, but it seems he did not see that the Exchange Bank deed of trust was satisfied. He took the acknowledgment of the last deed of trust, as stated before. Mr. Damrill was selling this property to a party named Hughes and Hughes would not buy without he had three years to pay the debt in. To accommodate them, I made the exchange, and got no money, not a cent. I finished paying Damrill the $500 about the time that Barry went to see about the release of the Exchange Bank deed of trust. I do not remember whether I had an abstract for the property or not, I thought I did, but I have looked for it, and could not find it. I have loaned on property without requiring an abstract. I have notes six or seven years old that I have not got an abstract for. I know that the Exchange Bank mort-

gage was on record; I also knew that the Maggie deed of trust was against the property.    They told me that they would go and pay the Exchange Bank deed of trust, that is, Damrill and Hughes; I do not know whether it was Damrill or Hughes that was to furnish the money to pay it with, they were in the office together.    At the time I made the first deed of trust, Damrill agreed to pay off the $150 Maggie deed of trust.    I am in possession of the property in controversy; Hughes turned over the property to me."

Damrill being dead, Mills was incompetent to testify to any conversation or transaction between them with respect to the loan of the $500, or its payment (section 8918, Revised Statutes 1889; Chapman v. Dougherty, 87 Mo. 617; Meier v. Thieman, 90 Mo. 433), and the court should not have permitted him to do so.    It was held in Chapman's case, supra, that the disability as a witness, of one of the original parties to a contract, or cause of action, in issue and on trial, where the other party is dead, and the survivor is a party to the suit, is coextensive with every occasion where such instrument or cause of action may be called in question.    Here, the arrangements between Damrill and Mills with respect to the loan by the latter to the former, and the repeated conversations and agreements thereafter with respect to it, were of importance, provided plaintiff had notice of the agreement by which the time for the payment of the $500 was extended for three years, to be secured by a new deed of trust upon the property, and Mills clearly incompetent to testify thereto.

Plaintiff showed a regular chain of title to the property from Maggie, and was entitled to judgment for its possession, unless the note for $150, executed by Maggie to Frances Mc-Cormack on December 21, 1891, due three years after its date, to secure whose payment the deed of trust executed by him to P. H. Martin, trustee, on the property in question, on the same

day under which defendant's claim title, was paid, and in consequence thereof the deed of trust no longer effective as a link in the chain of title.

Upon these questions the court found that the plaintiff had no notice of the transaction between Mills and Damrill further than that given by the record, and that she bought in good faith for a valuable consideration; that Damrill borrowed $500 of defendant Mills, giving a note for said $500 secured by a deed of trust on the aforesaid lot; that at the time Mills loaned this money he knew that the note for $150 had not been paid and that Damrill had assumed and agreed to pay the same; that Mills retained out of the $500 loaned enough money to pay the note of $150, when the same became due; that Mills, when the $150 became due in 1893, *paid the same* and took an assignment thereof, with the intention of holding all the rights he could therein; that P. H. Martin, who had said note for collection, regarded the note as paid.

Under these facts the question is, was the payment by Mills of the Maggie note, and taking an assignment thereof by the agent in whose hands it was for collection, a payment of the debt, and as a result a satisfaction of the deed of trust given by Maggie to secure its payment, or was it an assignment of the note to him, and an equitable assignment of the deed of trust by which its payment was secured?

The payment of a secured debt by one having an interest in the property by which it is secured, will not in all cases, extinguish the debt, or operate as a merger, and it will not be so held unless such was the intention of the party making the payment. But not then, if it was the duty of the party making the payment to extinguish the deed of trust for the benefit of another, for in such circumstances it will be held to operate as a discharge. Upon no principle of equity and justice should a payment made by a party upon a debt secured by a deed of

trust, in pursuance of a duty, in the proper performance of which others are interested, be applied as a purchase of the debt, and used for the consideration for the assignment and transfer of the deed of trust to himself or a third person. In this case, Mills retained out of the $500 which he loaned to Damrill, enough money with which to pay the $150 note to McCormack when it became due, and then paid the same, and took an assignment thereof to himself, and it must be held that he paid the note with the money retained by him for that purpose, for such was the course which would have been ordinarily pursued under such circumstances; that it was a payment of the note in fact, and that no interest in it or the deed of trust passed to him by reason of the assignment of the note.

The payment of the note by Mills with the money retained by him for that purpose was a duty that he owed to Damrill as well as to Maggie, and also to plaintiff who holds under the latter, and he should not now be heard to say that he did not pay the note, but purchased it, and had it assigned to him. Moreover, Martin testified that he understood the money paid by Mills was in payment of the note, and the court so found.

For reasons indicated we reverse the judgment and remand the cause. *Sherwood, P. J.,* and *Gantt, J.,* concur.